**ORDERED.**

**Dated:  June 28, 2023**

Jacob A. Brown
United States Bankruptcy Judge

**UNITED STATES BANKRUPTCY COURT**
**MIDDLE DISTRICT OF FLORIDA**
**JACKSONVILLE DIVISION**
www.flmb.uscourts.gov

In re:

PICCARD PETS SUPPLIES, CORP.

Debtor.

Case No. 3:23-bk-00210-JAB

Chapter 11
*SubChapter V*

**ORDER CONFIRMING THE FIRST AMENDED PLAN OF REORGANIZATION**
**FOR PICCARD PETS SUPPLIES, CORP DATED JUNE 6, 2023**

This case came before the Court at the hearing held on June 15, 2023 at 1:30 P.M., to

consider confirmation (the "Confirmation Hearing") of the First Amended Sub-Chapter V Plan of

Reorganization for Piccard Pets Supplies, Corp dated June 6, 2023 (Doc. No. 105) (the "Plan"),

filed by Piccard Pets Supplies, Corp the debtor, debtor-in-possession, and plan proponent (the

"Debtor").

Having heard the evidence proffered by counsel for the Debtor at the Confirmation

Hearing, and based upon the evidence presented showing the Court that the Plan meets all

applicable requirements for confirmation of a plan proposed under Chapter 11 of Title 11 of the

United States Code as set forth in 11 U.S.C. §§ 1191(a) and (b) it is

**ORDERED**

1.      The Plan is confirmed under 11 U.S.C. § 1190.  The Effective Date of the Plan shall

be July 10, 2023. A copy of the Plan is attached hereto as **Exhibit A**.

2.      The Court finds that the plan was a non-consensual plan pursuant to the terms of

11 U.S.C. §1191(b). The Debtor shall be the disbursing agent for any payments made to

priority, secured, and unsecured creditors through the Plan.

3.      Secured creditors shall retain any lien on property in which the estate has an

interest only to the extent of the value of such a creditor's interest and the estate's interest in such

property as determined by the Confirmed Plan, this Confirmation Order, and as of the Effective

date of the Plan.  Payments to secured creditors in which the Debtor has retained the collateral

securing the claim shall be in accordance with the Confirmed Plan and this Confirmation Order.

4.      The Debtor shall pay all Subchapter V Trustee fees assessed pursuant to 11

U.S.C. §503(b) and 11 U.S.C. §1191(e) as stated below in the claims section. Any applications

for compensation by any Trustee and/or professional employed by the Debtor shall be

filed within thirty (30) days of the date of this Order. Because this is a non-consensual plan, the

Subchapter V Trustee may file additional interim applications as appropriate until the final

decree is entered.

5.      The Debtor shall file with the Bankruptcy Court post-confirmation financial

reports or statements of disbursements for each quarter (or portion thereof) that this Chapter 11

case remains open, in a format prescribed by the United States Trustee.  The Debtor shall file

post-confirmation quarterly reports until this case is converted, dismissed or closed pursuant to

11 U.S.C. § 1106(a)(7) and Bankruptcy Rule 2015(a)(5). The subchapter V trustee shall monitor Debtor's compliance with the plan and is authorized to take any appropriate action in the event of default.

6.      This Confirmation Order supersedes any orders for adequate protection previously entered in this case and the same shall be of no further force and effect. This Confirmation Order imposes an affirmative duty on the holders and/or servicers of any claims secured by liens, mortgages, and/or deeds of trust that receive payments pursuant to this Plan to credit payments in a manner required by the Plan in accordance with 11 U.S.C. § 524(i).

7.      Any objection filed by a creditor that was not prosecuted at the Confirmation Hearing is deemed withdrawn and/or overruled by the entry of this Confirmation Order.

8.      The Debtor shall fund the Plan for the applicable commitment period using all disposable income, including any sums received from future tax refunds, during the applicable commitment period. The current disposable income was calculated at $2,000.00 per month for months 1-60 of the Plan as stated on **Exhibit A**. However, distributions to unsecured creditors will fluctuate each quarter based upon the Debtor's actual disposable income remaining after payment of senior claims; provided however, if the Debtor's actual disposable income is less than $6,000 in each quarter, the Debtor will still distribute $6,000 pro rata to Class 5 unsecured creditors.

9.      A schedule of payments to unsecured creditors pursuant to the Confirmed Plan and this Confirmation Order is attached and incorporated into this Confirmation Order as **Exhibit B**.  Upon completion of distributions to Class 5 (unsecured distributions) as set forth in **Exhibit B** to this Confirmation Order and the terms of the Confirmed Plan, the Debtor shall be entitled to a discharge pursuant to 11 U.S.C. § 1141.

10.     The Court reserves jurisdiction to consider any fee applications of professionals if filed within thirty (30) days of the date of this order.

11.     Confirmation of the Plan does not revest the property of the estate in the Debtor(s). Property of the estate shall revest in the Debtor(s) only upon Discharge of the case.

12.     The Court reserves jurisdiction to enforce the payment schedule to secured creditors as set forth in the Plan.

13.     Should the Debtor fail to make a payment required by the terms of the Plan, Creditors may pursue their remedies in state or federal court as to the total amount owed and unpaid pursuant to the terms of the confirmed Plan.

14.     Tax Returns. During the term of the Plan, the Debtor shall provide copies of annual income tax returns to the SubChapter V Trustee and the United States Trustee, within twenty days of the filing of such return.

15.     The Debtor(s) will not be discharged from any debt excepted from discharge under Section 523 of the Code.

16.     Third Party Bar imposed: Pursuant to Section 11 of the Confirmed Plan below, the following provisions are in effect as to Marlon Martinez.

**Upon Confirmation of this Plan or any Amended Plan with substantially the same language and compliance with the provisions of this Plan stated below, the Automatic Stay of 11 U.S.C. § 362(a) shall extend to any co-debtor who personally guaranteed secured, unsecured or leased debt of the corporation until such time as one of the four following termination provisions occurs: 1) the Chapter 11 case is discharged or dismissed; 2) the co-debtor leaves the employment of the corporation; 3) the plan is in default as to the creditor attempting to exercise its co-debtor guaranty; or 4) the co-debtor voluntarily waives such protection in writing to any creditor (whichever occurs first). This extension of the automatic stay shall not act as a discharge of any indebtedness still owed by a co-debtor upon the expiration of any of the four (4) termination provisions above.**
**In furtherance of the above, if the Plan is confirmed pursuant to the cramdown provisions of 11 U.S.C. § 1191(b) with respect to the unsecured class 5, after confirmation of the Plan through the date of the discharge the following provisions**

apply :

**1. The Debtor in this Plan shall provide quarterly reporting to the SubChapter V Trustee and all creditors through the filing of United States Trustee approved quarterly operating reports;**

**2. The SubChapter V Trustee and interested parties shall have the ability to object to the Debtor's calculation of disposable income as reflected in this plan through the filing of objections with the Court. In such a case, the Court will schedule a hearing as to whether the Debtor should modify the payment schedule to the unsecured creditors;**

**3. The Debtor will also supply its post confirmation tax returns to any member of Class 5 who so requests;**

**4. The officer compensation to Marlon Martinez for his post-confirmation work shall not exceed the amount of salary requested and/or awarded by the Court at Confirmation;**

**5. For the 60 month term of the plan, Marlon Martinez shall personally make a yearly contribution of $1,000 towards the unsecured claims in this case, for a total of $5,000 over the life of the plan. The additional distributions will be reflected in the confirmation order as a portion of the unsecured payment schedule in this case;**

**6. This Plan tolls and abates all statutes of limitations so that enjoined parties can seek relief from the co-debtor(s) after the Plan if claims remain.**

### 

Thomas C. Adam is directed to serve a copy of this order on interested parties and file a proof of service within 3 days of entry of the order.

*EXHIBIT A*
*To Confirmation Order*

**UNITED STATES BANKRUPTCY COURT**
**MIDDLE DISTRICT OF FLORIDA**
**JACKSONVILLE DIVISION**
www.flmb.uscourts.gov

In re:

PICCARD PETS SUPPLIES, CORP.

                    Debtor.

Case No.: 3:23-bk-00210-JAB

Chapter 11

**FIRST AMENDED SUB-CHAPTER V PLAN OF REORGANIZATION**
**FOR PICCARD PETS SUPPLIES, CORP**
**DATED JUNE 6, 2023**

/s/ Thomas C. Adam
Thomas C. Adam, Esq.
Florida Bar No. 648711
ADAM LAW GROUP, P.A.
2258 Riverside Avenue
Jacksonville, FL 32204
(904) 329-7249 Phone
(904) 606-1245 Facsimile
tadam@adamlawgroup.com

*Counsel for Plan Proponent*

**Dated: June 6, 2023**

## SUB-CHAPTER V BACKGROUND

### A. Description and History of the Debtor's Business

The Debtor is a Florida Corporation engaged in the business of retail sale of pet supplies through its brick and mortar store location and online store at Amazon.com. The Debtor operates out of its store front and office located at 5521 Blanding Blvd. The Debtor owns this facility and is current on its mortgage obligations with Ameris Bank.

The Debtor has fallen behind on certain trade debt and payments to merchant cash advance lenders. This Chapter 11 bankruptcy case has primarily been filed to restructure its secured loan and resolve its unsecured debt including merchant cash advances by providing payment to general unsecured creditors on a *pro rata* basis on the effective date of the plan.

### B. Liquidation Analysis

To confirm the Plan, the Court must find that all creditors and equity interest holders who do not accept the Plan will receive at least as much under the Plan as such claim and equity interest holders would receive in a chapter 7 liquidation. The Debtor has a Liquidation Value of $0. *See, Liquidation Analysis attached hereto as Exhibit A*

### C. Ability to make future plan payments and operate without further reorganization

The Plan Proponent must also show that it will have enough cash over the life of the Plan to make the required Plan payments and operate the debtor's business.

The Plan Proponent's financial projections show that the Debtor will have projected disposable income (as defined by § 1191(d) of the Bankruptcy Code) for the period described in § 1191(c)(2) of $2,000.00. *See, Plan Proponent projected financial information as Exhibit B.*

The final Plan payment is expected to be paid on July 1, 2028.

## ARTICLE I
## SUMMARY

**Upon Confirmation of this Plan or any Amended Plan with substantially the same language and compliance with the provisions of Article 10.05 or 10.06 of this Plan below, the Automatic Stay of 11 U.S.C. § 362(a) shall extend to any co-debtor who personally guaranteed secured, unsecured or leased debt of the corporation until such time as one of the four following termination provisions occurs: 1) the Chapter 11 case is discharged or Dismissed; 2) the codebtor leaves the employment of the corporation; 3) the plan is in default as to the creditor attempting to exercise it's co-debtor guaranty; or 4) the co-debtor voluntarily waives such protection in writing to any creditor (whichever occurs first).**

2

**This extension of the automatic stay shall not act as a discharge of any indebtedness still owed by a co-debtor upon the expiration of any of the four (4) termination provisions above.**

This First Amended Plan of Reorganization (the "Plan") is filed in accordance with Subchapter V of the Small Business Chapter 11 provisions of the United States Bankruptcy Code (the "Bankruptcy Code") by Piccard Pets Supplies, Corp. (the "Debtor"), and proposes to restructure its business loans as discussed below and provide for payment to unsecured creditors of all disposable income during months 1-60 from future income of the Debtor derived from income generated through its retail store and online pet supply business in order to obtain a discharge pursuant to 11 U.S.C. 1192. The Debtor is the proponent of the Plan within the meaning of Section 1129 of the Bankruptcy Code.

This Plan provides for one (1) class of priority claims; three (3) classes of secured claims; and one (1) class of general unsecured claims. Class five (5) unsecured creditors holding allowed claims will receive distribution under this Plan based on their pro rata share via monthly payments of the Debtor's disposable monthly income for 60 months beginning on the Effective Date of this Plan. This Plan also provides for the payment of administrative and priority claims either upon the effective date of the Plan, as agreed or as allowed under the Bankruptcy Code. All creditors should refer to Articles II through X of this Plan for information regarding the precise treatment of their claim.

**Your rights may be affected. You should read these papers carefully and discuss them with your attorney, if you have one. (If you do not have an attorney, you may wish to consult one).**

## ARTICLE II
## CLASSIFICATION OF CLAIMS AND INTEREST

2.01    **Class 1.**        All allowed claims entitled to priority under Section 507 of the Bankruptcy Code (except administrative expense claims under Sections 507(a)(2)), and priority tax claims under Section 507(a)(8)).

2.02    **Class 2.**        The secured claim of U.S. Small Business Administration secured by property of the Debtor described as all intangible and personal property of the Debtor to the extent allowed a secured claim under Section 506 of the Bankruptcy Code.

2.03    **Class 3.**        The secured claim of Ameris Bank secured by the real property located at 5521 Blanding Blvd, Jacksonville, FL 32244 and all intangible and personal property of the Debtor to the extent allowed a secured claim under Section 506 of the Bankruptcy Code.

**2.04  Class 4.**   The claim of Amazon Capital Services, LLC secured by the inventory of the Debtor to the extent allowed a secured claim under Section 506 of the Bankruptcy Code.

**2.05  Class 5.**   All unsecured claims allowed under Section 502 of the Bankruptcy Code including any deficiency claims that may arise as a result of treatment of Classes 2-4 creditors.

## ARTICLE III
## TREATMENT OF ADMINISTRATIVE EXPENSE CLAIMS
## U.S. TRUSTEE FEES, AND PRIORITY TAX CLAIMS

3.01    Unclassified Claims.  Under Section 1123(a)(1), administrative expense claims and priority tax claims are not considered as a "class" under the Bankruptcy Code.

3.02    Administrative Expense Claims.  Each holder of an administrative expense claim allowed under Section 503 of the Bankruptcy Code will be paid in full on the effective date of this Plan (as defined in Article VII), in cash, or upon such other terms as may be agreed upon by the holder of the claim and the Debtor.

3.03    Priority Tax Claims.  Each holder of a priority tax claim will be paid in regular monthly installments the total value of such claim as of the Petition Date, equal to the allowed amount of such claim over a period ending five years from the effective date of the Petition Date.

3.04    Sub-Chapter V Trustee Fees.  All fees and expenses required to be paid on or before the effective date of this Plan will be paid on the effective date per paragraph 3.02 above.

## ARTICLE IV
## TREATMENT OF CLAIMS AND INTERESTS UNDER THE PLAN

4.01    Claims and interest shall be treated as follows under this Plan:

| CLASS | IMPAIRMENT | TREATMENT |
|---|---|---|
| Class 1 – Priority Claim of United States Department of Treasury - IRS | Unimpaired | Class 1 is unimpaired by this Plan, and each holder of a Class 1 Priority Claim will be paid in full, upon the later of the effective date of this Plan as defined in Article VII, or the date on which such claim is allowed by a non-final appealable order, except tax claims that will be paid over sixty (60) months from the Petition Date at the statutory interest rate. |

| Class 2 - Secured Claim of U.S. Small Business Administration<br><br>Account Number **** | Impaired | Class 2 is impaired by this Plan.<br><br>Class 2 is secured by personal property of the Debtor described as all tangible and intangible property of the Debtor to the extent allowed as a secured claim under Section 506 of the Bankruptcy Code.<br><br>The Plan values the collateral of the Class 2 claim at $71,758.61 The holder of the Class 2 claim shall retain its lien on the above property and will receive cash payments equal to $71,758.61 payable at 4 % over one hundred and twenty (120) monthly payments of $726.52/month. |
|---|---|---|
| Class 3 – Secured Claim of Ameris Bank<br><br>Account Number **** | Impaired | Class 3 is impaired by this Plan.<br><br>Class 3 is secured by the real property of the Debtor located at 5521 Blanding Blvd, Jacksonville, FL 32244 and all intangible and personal property to the extent allowed as a secured claim under Section 506 of the Bankruptcy Code.<br><br>The Plan will provide the Class 3 Creditor treatment as stated in the Stipulation for Treatment Under Chapter 11 Plan Between Debtor and Ameris Bank (Doc. No. 43) and Order Granting same (Doc No. 48) which are attached hereto as *Exhibit C* and fully incorporated herein. |

| | | |
|---|---|---|
| Class 4 – Secured Claim of Amazon Capital Services, LLC<br><br>Account Number **** | Impaired | Class 4 is impaired by this Plan.<br><br>Class 4 is secured by inventory, seller account proceeds, merchant receivables, intangible and other personal property of the Debtor as described in the Loan Agreement between ACS and the Debtor.<br><br>The Plan proposes to pay the Class 4 claim in full. The Class 4 claim shall be allowed as a secured claim in the amount of $508,298.17. The holder of the Class 4 claim shall retain its liens on the above described property and will receive cash payments commencing on the effective date of the plan equal to $508,298.17 payable at 4.5% over eighty four (84) monthly payments of $7,066.82/month. |
| Class 5– General Unsecured Creditors | Impaired | Class 5 is impaired by this Plan.<br><br>To the extent that unsecured claims are filed and allowed, the Debtor shall pay the total amount of $120,000 to unsecured claims at the rate of $2,000/month during months 1-60 of the plan. Each allowed unsecured claim will received its prorate share of this payment for approximately 4% repayment of all unsecured claims. |

# ARTICLE V
## ALLOWANCE AND DISALLOWANCE OF CLAIMS

5.01    Disputed Claim.    A disputed claim is a claim that has not been allowed or disallowed by a final non-appealable order, and as to which either: i) a proof of claim has been

filed or deemed filed, and the Debtor or another party has filed an objection; or ii) no proof of claim has been filed, and the Debtors have scheduled such claim as disputed, contingent or un-liquidated.

5.02  <u>Delay of Distribution on a Disputed Claim</u>.  No distribution will be made on account of a disputed claim unless such claim is allowed by a final non-appealable order.

5.03  <u>Settlement of Disputed Claims</u>.  The Debtor will have the power and authority to settle and compromise a disputed claim with court approval and compliance with Rule 9019 of the Federal Rules of Bankruptcy Procedure.

## ARTICLE VI
## PROVISIONS OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES

6.01  <u>Assumed Executory Contracts and Unexpired Leases.</u>

(a)    The Debtors assume the following executory contracts and/or unexpired leases effective upon the effective date of this Plan as provided in Article VII:

*Amazon Services Business Solutions Agreement between Debtor and Amazon Capital Services, LLC*

*Group Policy for Piccard Meds 4 Pets Corp w/ UnitedHealthcare Insurance Company; Effective Date August 1, 2022*

(b)    The Debtor will be conclusively deemed to have rejected all executory contracts and/or unexpired leases not expressly assumed under section 6.01 of this Plan or before the date of the order confirming this Plan.  **A proof of a claim arising from the rejection of an executory contract or unexpired lease under this section must be filed no later than thirty (30) days after the date of the order confirming this Plan.**

## ARTICLE VII
## MEANS FOR IMPLEMENTAION OF THIS PLAN

7.01  <u>Property of the Estate; Release of Liens.</u> Except as otherwise expressly provided in the Plan or in the order confirming the Plan, (i) The Debtor will retain all property of the estate and confirmation of the Plan vests all property of the estate in the Debtor, and (ii) after confirmation of the Plan, the property dealt with by the Plan shall be free and clear of any and all liens, claims, and interests of any creditors.

7.02  <u>Duty to Correctly Credit Payments/Debtors Payments Considered Made Under the Plan</u>.  Confirmation of this Plan shall impose an affirmative duty on the holders and/or the servicers of any claims secured by liens, mortgages and/or deeds of trust to recalibrate any accounting system designed to account for distributions made under this Plan to the value of each claim as provided under this Plan and to apply the direct post-petition monthly payments paid on account of the Debtor to the month in which each payment was paid, whether or not such payments are

immediately applied by the creditor to the outstanding loan balance or are placed into some type of suspense, forbearance or similar account. All payments made to any creditors on account of the Debtor after confirmation of this Plan shall be considered made under this Plan regardless of whether this case is substantially consummated, a final decree is entered, and closed.

7.03    <u>Business Operations and Cash Flow</u>. The Plan contemplates that the Debtor will continue to manage and operate its business with low operating expenses. The Debtor believes the cash flow generated from operations will be sufficient to make all Plan Payments and maintain existing operations, as established by the Projections.

7.04    <u>Funds Generated During Chapter 11</u>. Funds generated from operations through the Effective Date will be used for Plan Payments; however, the Debtor's cash on hand as of Confirmation will be available for payment of Administrative Expenses.

7.05    <u>Management and Control of Reorganized Debtor.</u> The operations of the Reorganized Debtor shall continue to be overseen by the Debtor's current CEO Marlon Martinez. The powers and compensation of the CEO of the Reorganized Debtor shall be substantially the same as the CEO's powers as of the Petition Date. Mr. Martinez will continue to be compensated a weekly gross salary of $2,884.62.

## ARTICLE VIII
## <u>GENERAL PROVISIONS</u>

8.01    <u>Definitions and Rules of Construction</u>. The definitions and rules of construction set forth in §§ 101 and 102 of the Bankruptcy Code shall apply when terms defined or construed in the Bankruptcy Code are used in this Plan and as are generally understood.

8.02    <u>Effective Date</u>. The Debtor will continue to operate as Debtor-in-possession during the period from the date the order confirming this Plan is entered (the "Confirmation Date") through and until the effective date, which will be fourteen (14) days after the Confirmation Date (the "Effective Date").

8.03    <u>Severability</u>. If any provision in this Plan is determined to be unenforceable, the determination will in no way limit or affect the enforceability and operative effect of any other provision of this Plan.

8.04    <u>Binding Effect</u>. The rights and obligations of any entity named or referred to in this Plan will be binding upon, and will inure to the benefit of the successors or assigns of such entity.

8.05    <u>Captions</u>. The headings contained in this Plan are for convenience of reference only and do not affect the meaning or interpretation of this Plan.

8.06    <u>Controlling Effect</u>. Unless a rule of law or procedure is supplied by federal law (including the Bankruptcy Code or the Federal Rules of Bankruptcy Procedure), the laws of the

State of Florida govern this Plan and any agreements, documents, and instruments executed in connection with this Plan, except as otherwise provided in this Plan.

8.07    Corporate Governance. As required by § 1123(a)(6) of the Code, Marlon Martinez shall remain as CEO of the Debtor after confirmation of this Plan and 100% shareholder. The Debtor shall not issue any further non-voting equity securities.

# ARTICLE IX
# DISCHARGE

**9.01.    Discharge. Pursuant to 11 U.S.C. § 1192, upon the completion of all disposable income/unsecured payments during the term of this Plan, the debtor will be discharged from any debt that arose before confirmation of this Plan, all debts provided in section 1141(d)(1)(A) of this title, and all other debts allowed under section 503 of this title and provided for in the plan, except any debt—**
**(1) on which the last payment is due after the first 3 years of the plan, or such other time not to exceed 5 years fixed by the court; or**
**(2) of the kind specified in section 523(a) of this title.**

# ARTICLE X
# OTHER PROVISIONS

10.01    Payments.  Payments to the various Classes under this Plan shall commence twenty (20) days after the Effective Date of the Plan unless otherwise specifically stated in the Confirmation Order.

10.02    Payments for Property Taxes and Property Insurance.  Unless otherwise provided for by this Plan or any order confirming this Plan, the Plan Proponents shall pay all property taxes and property insurance directly to the relevant taxing authorities and insurance providers.  Any and all agreements for the establishment of escrow accounts are deemed rejected by this Plan, unless specifically assumed.  Confirmation of this Plan shall impose an affirmative duty on the holders and/or the servicers of any claims secured by liens, mortgages and/or deeds of trust (hereinafter referred collectively as the "Secured Classes" and individually as the "Secured Class") to cancel any and all escrow accounts that are deemed rejected by this Plan.  The Secured Classes must assert and claim repayment for any escrow advances paid on account of property taxes or property insurance prior to the entry of any order confirming this Plan, or payment by the Plan Proponents for any escrow advances shall be deemed waived.

10.03    Default Provisions.  The due date of any deferred cash payment required under the Plan as to the Secured Classes shall be the first (1st) day of each month beginning on the month immediately following the effective date of the Plan (the "Payment Due Date").  There shall be a fifteen (15) day grace period for any deferred cash payment required by the Plan without penalty,

fee or other charge (the "Grace Period"). Collectively, the Payment Due Date and the Grace Period are referred to herein as the Permissible Payment Period. In the event that any deferred cash payment required by the Plan is not made within the Permissible Payment Period, the Debtor shall be in default under this Plan as to the relevant secured claim ("Default"). Prior to enforcing the lien encumbering the collateral, the holder of the secured claim shall give written notice directly to the Debtor.

The notice shall specify: (a) the Default; (b) the action required to cure the Default; (c) a date, not less than 30 days from the date the notice is given to the Debtor, by which the Default must be cured; and (d) that failure to cure the Default on or before the date specified in the notice may result in foreclosure of the lien encumbering the collateral.

If the Default is not cured on or before the date specified in the notice, the holder of the secured claim may, at its option, require immediate payment in full of all sums secured by the collateral, as determined by any order confirming the Plan, without further demand and may foreclose upon its lien by judicial proceeding.

10.04   Partial Pre-Payment Provisions. The Debtor shall be entitled to pay any portion (or all) of the principal outstanding with regard to the secured claims, as determined by the Confirmed Plan, at any time without penalty. Pre-payment of any principal as to the secured claims shall not affect the payment due on any given Due Date or the payment schedule, except that any principal pre-paid shall be deducted from the last principal portion of the payment due under the payment schedule, with the interest portion deemed satisfied (the "Partial Pre-Payment"). In the event that the collateral is sold or the balance outstanding on any given date is paid by refinance or otherwise, the principal outstanding to be satisfied as to the secured claim shall include the amount outstanding as to the secured claim as valued by this Plan after application of all payments made pursuant to the Plan.

## ARTICLE XI
## PLAN INJUNCTION TO EXTEND AUTOMATIC STAY

11.01   Adversary Complaint for Temporary Injunction. On about March 24, 2023, the Debtor filed an Adversary Complaint to Extend the Automatic Stay to the Debtor's CEO and Shareholder, Marlon Martinez, in the United States Bankruptcy Court, Middle District of Florida, Jacksonville Division, styled *as Piccard Pets Supplies Corp. v. Fox Capital Group, Inc., et al, Case No.: 3:23-ap-00028.* On about April 25, 2023, the Court entered an Order Granting Debtor's Motion for Preliminary Injunction (Doc. No. 10). *A true and correct copy of the Motion for Preliminary Injunction and Order are attached hereto as Exhibit D.*

11.02   Plan Injunction to Extend of Automatic Stay. Upon Confirmation of this Plan or any Amended Plan with substantially the same language and compliance with the provisions  of this Plan stated below, the Automatic Stay of 11 U.S.C. § 362(a) shall extend to any co-debtor who personally guaranteed secured, unsecured or leased debt of the corporation until such time as one of the four following termination provisions occurs: 1) the Chapter 11 case is discharged or dismissed; 2) the co-debtor leaves the employment of the corporation; 3) the plan is in default as to the creditor attempting to exercise it's co-debtor guaranty; or 4) the co-debtor voluntarily waives

such protection in writing to any creditor (whichever occurs first). This extension of the automatic stay shall not act as a discharge of any indebtedness still owed by a co-debtor upon the expiration of any of the four (4) termination provisions above.

In furtherance of the above, if the Plan is confirmed pursuant to the cramdown provisions of 11 U.S.C. § 1191(b) with respect to the unsecured class 5, after confirmation of the Plan through the date of the discharge the following provisions apply :

1. The Debtor in this Plan shall provide quarterly reporting to the SubChapter V Trustee and all creditors through the filing of United States Trustee approved quarterly operating reports;

2. The SubChapter V Trustee and interested parties shall have the ability to object to the Debtor's calculation of disposable income as reflected in this plan through the filing of objections with the Court. In such a case, the Court will schedule a hearing as to whether the Debtor should modify the payment schedule to the unsecured creditors;

3. The Debtor will also supply its post confirmation tax returns to any member of Class 5 who so requests;

4. The officer compensation to Marlon Martinez for his post-confirmation work compensation shall not exceed the amount of salary requested and/or awarded by the Court at Confirmation;

5. For the 60 month term of the plan, Marlon Martinez shall personally make a yearly contribution of $1,000 towards the unsecured claims in this case, for a total of $5,000 over the life of the plan. The additional distributions will be reflected in the confirmation order as a portion of the unsecured payment schedule in this case;

6. This Plan tolls and abates all statutes of limitations so that enjoined parties can seek relief from the co-debtor(s) after the Plan if claims remain.

11.03 <u>Parties Benefiting from Plan Injunction</u>: The sole co-debtor party intending to receive benefit from this Plan Injunction is the Debtor's CEO and Shareholder, Marlon Martinez.

11.04 <u>Parties Enjoined by the Plan Injunction</u>: The parties intending to be enjoined by this Plan Injunction, the basis and amounts of the debts, and the source for co-debtor liability are as follows:

**Fox Capital Group, Inc., d/b/a Fox Business Funding** ($165,000) - merchant cash advance lender who entered into agreement with the Debtor to advance monies in return for a purported purchase of the Debtor's future receivables. As part of the agreement, Marlon Martinez executed a personal guaranty.

**White Road Capital, LLC d/b/a GFE Holdings** ($38,061.70) - merchant cash advance lender who entered into agreement with the Debtor to advance monies in return for a purported purchase of the Debtor's future receivables. As part of the agreement, Marlon Martinez executed a personal guaranty.

**Sellers Funding Corp** ($102,362.50) - merchant cash advance lender who entered into agreement with the Debtor to advance monies in return for a purported purchase of the Debtor's future receivables. As part of the agreement, Marlon Martinez executed a personal guaranty.

**CloudFund, LLC** ($106,170.00) - merchant cash advance lender who entered into agreement with the Debtor to advance monies in return for a purported purchase of the Debtor's future receivables. As part of the agreement, Marlon Martinez executed a personal guaranty.

**ODK Capital, LLC** ($257,627.47) - business lender who entered into an agreement to loan monies to the Debtor. As part of the agreement, Marlon Martinez executed a personal guaranty.

**Celtic Bank** ($64,872.00) - business lender who entered into an agreement to loan monies to the Debtor. As part of the agreement, Marlon Martinez executed a personal guaranty.

**The Law Offices of Kenneth H. Dramer, P.C.** ($22,000) – business debt relief lawfirm hired by Marlon Martinez, individually, to assist with resolutions of the Debtor's debts.

**American Express** ($429,420.49)– business credit cards personally guaranteed by Marlon Martinez.

11.05 <u>Factual Basis for Plan Injunction</u>: The Debtor's estate will suffer irreparable harm unless collection activities Mr. Martinez are stayed during the pendency of the repayment period prescribed by the Plan. The Debtor believes that Marlon Martinez is critical to its reorganization efforts. He will be devoting his time (at least 55+ hours most weeks), industry knowledge and expertise to revitalizing the Debtor during the term of the plan. Protracted litigation resulting in judgments, garnishments, charging liens or other collection activity against Mr. Martinez will have a detrimental effect on the ability of the Debtor to reorganize and repay creditors. Additionally, if creditors are able to obtain personal judgments against Marlon Martinez then his 100% equity ownership in the Debtor would be in jeopardy which could result in disruption to Debtor's business operations. In the event Marlon A. Martinez's ownership interest is seized, the Debtor would not be able to operate or generate revenues to fund the Plan.

11.06 <u>Legal Basis for Plan Injunction</u>: The Court has authority to grant this Plan Injunction. Factors Court's will examine to determine the are similar to those for a bar order and include: (1) there is an identity of interests between the debtor and the third party, usually an indemnity relationship, such that a suit against the non-debtor is, in essence, a suit against the debtor or will deplete the assets of the estate; (2) the non-debtor has contributed substantial assets to the reorganization; (3) the injunction is essential to reorganization, namely, the reorganization hinges on the debtor being free from indirect suits against parties who would have indemnity or contribution claims against the debtor; (4) the impacted class, or classes, has overwhelmingly voted to accept the plan; (5) the plan provides a mechanism to pay for all, or substantially all, of the class or classes affected by the injunction; and (6) the plan provides an opportunity for those claimants who choose not to settle to recover in full. *In re Dow Corning Corp.*, 280 F.3d at 658. The list is nonexclusive and flexibly applied. *In re Seaside Eng'g & Surveying, Inc.*, 780 F.3d at 1079.

Bankruptcy Courts in the Middle District of Florida have approved Plan Injunctions in Chapter 11 Bankruptcy Cases in cases involving similar fact patters. *See, In re Global Travel*

4. The officer compensation to Marlon Martinez for his post-confirmation work compensation shall not exceed the amount of salary requested and/or awarded by the Court at Confirmation;

5. For the 60 month term of the plan, Marlon Martinez shall personally make a yearly contribution of $1,000 towards the unsecured claims in this case, for a total of $5,000 over the life of the plan. The additional distributions will be reflected in the confirmation order as a portion of the unsecured payment schedule in this case;

6. This Plan tolls and abates all statutes of limitations so that enjoined parties can seek relief from the co-debtor(s) after the Plan if claims remain.

Respectfully submitted on April 28, 2023

/s/ Thomas C. Adam
Thomas C. Adam, Esq.
Florida Bar No. 648711
ADAM LAW GROUP, P.A.
2258 Riverside Avenue
Jacksonville, FL 32204
(904) 329-7249 telephone
(904) 606-1245 facsimile
tadam@adamlawgroup.com

*Counsel to Plan Proponent*

11

# Exhibit
# A

| | Address/Description | Market Value | Lien Amount Applied to Asset | Lienholder | Exemptions | Value to Liquidation |
|---|---|---|---|---|---|---|
| **Real Estate** | | | | | | |
| | 5521 Blanding Blvd Jacksonville FL 32244 | $561,700.00 | $561,700.00 | Ameris Bank | $0.00 | $0.00 |
| **Personal Property** | | | | | | |
| | Office Fixtures/Shelving | $32,000.00 | $32,000.00 | Ameris Bank | $0.00 | $0.00 |
| | 2016 F-150 | $37,000.00 | $19,241.39 | Ameris Bank | $0.00 | $0.00 |
| | | | $17,758.61 | SBA | | |
| | Forklifts and Hand cars | $18,000.00 | $18,000.00 | SBA | $0.00 | $0.00 |
| **Cash/Checking** | | | | | | |
| | Ameris Checking 2483 | $9,146.00 | $9,146.00 | Ameris Bank | $0.00 | $0.00 |
| | Regions Bank | $38,796.00 | $38,796.00 | Ameris Bank | $0.00 | $0.00 |
| | Truist Bank | $731.50 | $731.50 | Ameris Bank | $0.00 | $0.00 |
| | Ameris  Checking | $34.62 | $34.62 | Ameris Bank | $0.00 | $0.00 |
| **Other Assets** | | | | | | |
| | Accounts Receivable | $40,000.00 | $40,000.00 | Ameris Bank | | |
| | Inventory | $680,155.00 | $508,398.17 | Amazon Cap Svs | $0.00 | $0.00 |
| | | | $171,756.83 | Ameris Bank | $0.00 | $0.00 |
| | ERYC Employee Credits | $36,000.00 | $36,000.00 | SBA | $0.00 | $0.00 |
| | | | | | | |
| | | | | | Asset Value | $0.00 |
| **Secured Party** | **Total Secured Value** | | | | Liquidation Costs | $0.00 |
| Ameris Bank | $873,406.34 | | | | Trustee Fees | $0.00 |
| Amazon | $508,398.17 | | | | | |
| US Small Business Assn | $71,758.61 | | | | **Liquidation Value** | $0.00 |

# Exhibit
# B

**PLAN 3 YEAR CASH FLOW PROJECTIONS**

| 2023 | July | August | September | October | November | December |
|---|---|---|---|---|---|---|
| **REVENUE** | | | | | | |
| Gross Revenue | $305,000.00 | $305,000.00 | $305,000.00 | $305,000.00 | $305,000.00 | $305,000.00 |
| Cost of Goods Sold | $92,000.00 | $92,000.00 | $92,000.00 | $92,000.00 | $92,000.00 | $92,000.00 |
| *Net Revenue* | $213,000.00 | $213,000.00 | $213,000.00 | $213,000.00 | $213,000.00 | $213,000.00 |
| | | | | | | |
| **EXPENSES** | | | | | | |
| *Accounting Software* | $35.00 | $35.00 | $35.00 | $35.00 | $35.00 | $35.00 |
| *Advertising & Marketing* | $250.00 | $250.00 | $250.00 | $250.00 | $250.00 | $250.00 |
| *Amazon Advertising* | $1,000.00 | $1,000.00 | $1,000.00 | $1,000.00 | $1,000.00 | $1,000.00 |
| *Amazon Seller Fees and Charges* | $35,000.00 | $35,000.00 | $35,000.00 | $35,000.00 | $35,000.00 | $35,000.00 |
| *Amazon Shipping Fees* | $300.00 | $300.00 | $300.00 | $300.00 | $300.00 | $300.00 |
| *Bank Charges* | $650.00 | $650.00 | $650.00 | $650.00 | $650.00 | $650.00 |
| *Dues and Subscriptions* | $600.00 | $600.00 | $600.00 | $600.00 | $600.00 | $600.00 |
| *Ebay Fees* | $16,000.00 | $16,000.00 | $16,000.00 | $16,000.00 | $16,000.00 | $16,000.00 |
| *Insurance* | $5,500.00 | $5,500.00 | $5,500.00 | $5,500.00 | $5,500.00 | $5,500.00 |
| *Interest Paid* | $150.00 | $150.00 | $150.00 | $150.00 | $150.00 | $150.00 |
| *Inventory Software* | $750.00 | $750.00 | $750.00 | $750.00 | $750.00 | $750.00 |
| *Lawncare* | $1,000.00 | $1,000.00 | $1,000.00 | $1,000.00 | $1,000.00 | $1,000.00 |
| *Professional Services* | $1,000.00 | $1,000.00 | $1,000.00 | $1,000.00 | $1,000.00 | $1,000.00 |
| *Office Expenses & Supplies* | $750.00 | $750.00 | $750.00 | $750.00 | $750.00 | $750.00 |
| *Contractors* | $500.00 | $500.00 | $500.00 | $500.00 | $500.00 | $500.00 |
| *Payoneer Charges & Fees* | $500.00 | $500.00 | $500.00 | $500.00 | $500.00 | $500.00 |
| *Paypal Fees* | $600.00 | $600.00 | $600.00 | $600.00 | $600.00 | $600.00 |
| *Payroll & Related* | $55,000.00 | $55,000.00 | $55,000.00 | $55,000.00 | $55,000.00 | $55,000.00 |
| *Repairs & Maintenance* | $45.00 | $45.00 | $45.00 | $45.00 | $45.00 | $45.00 |
| *Shipping Supplies* | $9,000.00 | $9,000.00 | $9,000.00 | $9,000.00 | $9,000.00 | $9,000.00 |
| *Shipping & Freight* | $54,000.00 | $54,000.00 | $54,000.00 | $54,000.00 | $54,000.00 | $54,000.00 |
| *Utilities* | $1,400.00 | $1,400.00 | $1,400.00 | $1,400.00 | $1,400.00 | $1,400.00 |
| *Walmart Fees* | $12,000.00 | $12,000.00 | $12,000.00 | $12,000.00 | $12,000.00 | $12,000.00 |
| *Trustee Fees* | $1,000.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| *Waste & Recycling* | $800.00 | $800.00 | $800.00 | $800.00 | $800.00 | $800.00 |
| *Website* | $750.00 | $750.00 | $750.00 | $750.00 | $750.00 | $750.00 |
| | | | | | | |
| **Total Operating Expenses** | $198,545.00 | $197,545.00 | $197,545.00 | $197,545.00 | $197,545.00 | $197,545.00 |
| | | | | | | |
| **PLAN PAYMENTS** | | | | | | |
| *Class 1 Priority* | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| *Class 2 SBA* | $726.52 | $726.52 | $726.52 | $726.52 | $726.52 | $726.52 |
| *Class 3 Ameris Bank* | $5,627.37 | $5,627.37 | $5,627.37 | $5,627.37 | $5,627.37 | $5,627.37 |
| *Class 4 Amazon* | $7,066.82 | $7,066.82 | $7,066.82 | $7,066.82 | $7,066.82 | $7,066.82 |
| | | | | | | |
| **Total Plan Payments** | $13,420.71 | $13,420.71 | $13,420.71 | $13,420.71 | $13,420.71 | $13,420.71 |
| | | | | | | |
| **NET CASH FLOW** | $1,034.29 | $2,034.29 | $2,034.29 | $2,034.29 | $2,034.29 | $2,034.29 |

| 2024 | January | February | March | April | May | June | July | August | September | October | November | December |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| **REVENUE** | | | | | | | | | | | | |
| Gross Revenue | $320,250.00 | $320,250.00 | $320,250.00 | $320,250.00 | $320,250.00 | $320,250.00 | $320,250.00 | $320,250.00 | $320,250.00 | $320,250.00 | $320,250.00 | $320,250.00 |
| Cost of Goods Sold | $96,600.00 | $96,600.00 | $96,600.00 | $96,600.00 | $96,600.00 | $96,600.00 | $96,600.00 | $96,600.00 | $96,600.00 | $96,600.00 | $96,600.00 | $96,600.00 |
| *Net Revenue* | $223,650.00 | $223,650.00 | $223,650.00 | $223,650.00 | $223,650.00 | $223,650.00 | $223,650.00 | $223,650.00 | $223,650.00 | $223,650.00 | $223,650.00 | $223,650.00 |
| | | | | | | | | | | | | |
| **EXPENSES** | | | | | | | | | | | | |
| *Accounting Software* | $35.00 | $35.00 | $35.00 | $35.00 | $35.00 | $35.00 | $35.00 | $35.00 | $35.00 | $35.00 | $35.00 | $35.00 |
| *Advertising & Marketing* | $250.00 | $250.00 | $250.00 | $250.00 | $250.00 | $250.00 | $250.00 | $250.00 | $250.00 | $250.00 | $250.00 | $250.00 |
| *Amazon Advertising* | $1,000.00 | $1,000.00 | $1,000.00 | $1,000.00 | $1,000.00 | $1,000.00 | $1,000.00 | $1,000.00 | $1,000.00 | $1,000.00 | $1,000.00 | $1,000.00 |
| *Amazon Seller Fees and Charges* | $35,000.00 | $35,000.00 | $35,000.00 | $35,000.00 | $35,000.00 | $35,000.00 | $35,000.00 | $35,000.00 | $35,000.00 | $35,000.00 | $35,000.00 | $35,000.00 |
| *Amazon Shipping Fees* | $300.00 | $300.00 | $300.00 | $300.00 | $300.00 | $300.00 | $300.00 | $300.00 | $300.00 | $300.00 | $300.00 | $300.00 |
| *Bank Charges* | $650.00 | $650.00 | $650.00 | $650.00 | $650.00 | $650.00 | $650.00 | $650.00 | $650.00 | $650.00 | $650.00 | $650.00 |
| *Dues and Subscriptions* | $600.00 | $600.00 | $600.00 | $600.00 | $600.00 | $600.00 | $600.00 | $600.00 | $600.00 | $600.00 | $600.00 | $600.00 |
| *Ebay Fees* | $16,000.00 | $16,000.00 | $16,000.00 | $16,000.00 | $16,000.00 | $16,000.00 | $16,000.00 | $16,000.00 | $16,000.00 | $16,000.00 | $16,000.00 | $16,000.00 |
| *Insurance* | $5,500.00 | $5,500.00 | $5,500.00 | $5,500.00 | $5,500.00 | $5,500.00 | $5,500.00 | $5,500.00 | $5,500.00 | $5,500.00 | $5,500.00 | $5,500.00 |
| *Interest Paid* | $150.00 | $150.00 | $150.00 | $150.00 | $150.00 | $150.00 | $150.00 | $150.00 | $150.00 | $150.00 | $150.00 | $150.00 |
| *Inventory Software* | $750.00 | $750.00 | $750.00 | $750.00 | $750.00 | $750.00 | $750.00 | $750.00 | $750.00 | $750.00 | $750.00 | $750.00 |
| *Lawncare* | $1,000.00 | $1,000.00 | $1,000.00 | $1,000.00 | $1,000.00 | $1,000.00 | $1,000.00 | $1,000.00 | $1,000.00 | $1,000.00 | $1,000.00 | $1,000.00 |
| *Professional Services* | $1,000.00 | $1,000.00 | $1,000.00 | $1,000.00 | $1,000.00 | $1,000.00 | $1,000.00 | $1,000.00 | $1,000.00 | $1,000.00 | $1,000.00 | $1,000.00 |
| *Office Expenses & Supplies* | $750.00 | $750.00 | $750.00 | $750.00 | $750.00 | $750.00 | $750.00 | $750.00 | $750.00 | $750.00 | $750.00 | $750.00 |
| *Contractors* | $500.00 | $500.00 | $500.00 | $500.00 | $500.00 | $500.00 | $500.00 | $500.00 | $500.00 | $500.00 | $500.00 | $500.00 |
| *Payoneer Charges & Fees* | $500.00 | $500.00 | $500.00 | $500.00 | $500.00 | $500.00 | $500.00 | $500.00 | $500.00 | $500.00 | $500.00 | $500.00 |
| *Paypal Fees* | $600.00 | $600.00 | $600.00 | $600.00 | $600.00 | $600.00 | $600.00 | $600.00 | $600.00 | $600.00 | $600.00 | $600.00 |
| *Payroll & Related* | $65,000.00 | $65,000.00 | $65,000.00 | $65,000.00 | $65,000.00 | $65,000.00 | $65,000.00 | $65,000.00 | $65,000.00 | $65,000.00 | $65,000.00 | $65,000.00 |
| *Repairs & Maintenance* | $45.00 | $45.00 | $45.00 | $45.00 | $45.00 | $45.00 | $45.00 | $45.00 | $45.00 | $45.00 | $45.00 | $45.00 |
| *Shipping Supplies* | $9,500.00 | $9,500.00 | $9,500.00 | $9,500.00 | $9,500.00 | $9,500.00 | $9,500.00 | $9,500.00 | $9,500.00 | $9,500.00 | $9,500.00 | $9,500.00 |
| *Shipping & Freight* | $54,000.00 | $54,000.00 | $54,000.00 | $54,000.00 | $54,000.00 | $54,000.00 | $54,000.00 | $54,000.00 | $54,000.00 | $54,000.00 | $54,000.00 | $54,000.00 |
| *Utilities* | $1,400.00 | $1,400.00 | $1,400.00 | $1,400.00 | $1,400.00 | $1,400.00 | $1,400.00 | $1,400.00 | $1,400.00 | $1,400.00 | $1,400.00 | $1,400.00 |
| *Walmart Fees* | $12,000.00 | $12,000.00 | $12,000.00 | $12,000.00 | $12,000.00 | $12,000.00 | $12,000.00 | $12,000.00 | $12,000.00 | $12,000.00 | $12,000.00 | $12,000.00 |
| *Waste & Recycling* | $800.00 | $800.00 | $800.00 | $800.00 | $800.00 | $800.00 | $800.00 | $800.00 | $800.00 | $800.00 | $800.00 | $800.00 |
| *Website* | $750.00 | $750.00 | $750.00 | $750.00 | $750.00 | $750.00 | $750.00 | $750.00 | $750.00 | $750.00 | $750.00 | $750.00 |
| | | | | | | | | | | | | |
| **Total Operating Expenses** | $208,045.00 | $208,045.00 | $208,045.00 | $208,045.00 | $208,045.00 | $208,045.00 | $208,045.00 | $208,045.00 | $208,045.00 | $208,045.00 | $208,045.00 | $208,045.00 |
| | | | | | | | | | | | | |
| **PLAN PAYMENTS** | | | | | | | | | | | | |
| *Class 1 Priority* | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| *Class 2 SBA* | $726.52 | $726.52 | $726.52 | $726.52 | $726.52 | $726.52 | $726.52 | $726.52 | $726.52 | $726.52 | $726.52 | $726.52 |
| *Class 3 Ameris Bank* | $5,627.37 | $5,627.37 | $5,627.37 | $5,627.37 | $5,627.37 | $5,627.37 | $5,627.37 | $5,627.37 | $5,627.37 | $5,627.37 | $5,627.37 | $5,627.37 |

| | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|
| Class 4 Amazon | $7,066.82 | $7,066.82 | $7,066.82 | $7,066.82 | $7,066.82 | $7,066.82 | $7,066.82 | $7,066.82 | $7,066.82 | $7,066.82 | $7,066.82 |
| **Total Plan Payments** | **$13,420.71** | **$13,420.71** | **$13,420.71** | **$13,420.71** | **$13,420.71** | **$13,420.71** | **$13,420.71** | **$13,420.71** | **$13,420.71** | **$13,420.71** | **$13,420.71** |
| **NET CASH FLOW** | **$2,184.29** | **$2,184.29** | **$2,184.29** | **$2,184.29** | **$2,184.29** | **$2,184.29** | **$2,184.29** | **$2,184.29** | **$2,184.29** | **$2,184.29** | **$2,184.29** |

### 2025

| | | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| **REVENUE** | | | | | | | | | | | | |
| Gross Revenue | $336,000.00 | $336,000.00 | $336,000.00 | $336,000.00 | $336,000.00 | $336,000.00 | $336,000.00 | $336,000.00 | $336,000.00 | $336,000.00 | $336,000.00 | $336,000.00 |
| Cost of Goods Sold | $102,000.00 | $102,000.00 | $102,000.00 | $102,000.00 | $102,000.00 | $102,000.00 | $102,000.00 | $102,000.00 | $102,000.00 | $102,000.00 | $102,000.00 | $102,000.00 |
| *Net Revenue* | *$234,000.00* | *$234,000.00* | *$234,000.00* | *$234,000.00* | *$234,000.00* | *$234,000.00* | *$234,000.00* | *$234,000.00* | *$234,000.00* | *$234,000.00* | *$234,000.00* | *$234,000.00* |
| **EXPENSES** | | | | | | | | | | | | |
| Accounting Software | $35.00 | $35.00 | $35.00 | $35.00 | $35.00 | $35.00 | $35.00 | $35.00 | $35.00 | $35.00 | $35.00 | $35.00 |
| Advertising & Marketing | $250.00 | $250.00 | $250.00 | $250.00 | $250.00 | $250.00 | $250.00 | $250.00 | $250.00 | $250.00 | $250.00 | $250.00 |
| Amazon Advertising | $1,100.00 | $1,100.00 | $1,100.00 | $1,100.00 | $1,100.00 | $1,100.00 | $1,100.00 | $1,100.00 | $1,100.00 | $1,100.00 | $1,100.00 | $1,100.00 |
| Amazon Seller Fees and Charges | $37,500.00 | $37,500.00 | $37,500.00 | $37,500.00 | $37,500.00 | $37,500.00 | $37,500.00 | $37,500.00 | $37,500.00 | $37,500.00 | $37,500.00 | $37,500.00 |
| Amazon Shipping Fees | $400.00 | $400.00 | $400.00 | $400.00 | $400.00 | $400.00 | $400.00 | $400.00 | $400.00 | $400.00 | $400.00 | $400.00 |
| Bank Charges | $650.00 | $650.00 | $650.00 | $650.00 | $650.00 | $650.00 | $650.00 | $650.00 | $650.00 | $650.00 | $650.00 | $650.00 |
| Dues and Subscriptions | $600.00 | $600.00 | $600.00 | $600.00 | $600.00 | $600.00 | $600.00 | $600.00 | $600.00 | $600.00 | $600.00 | $600.00 |
| Ebay Fees | $17,500.00 | $17,500.00 | $17,500.00 | $17,500.00 | $17,500.00 | $17,500.00 | $17,500.00 | $17,500.00 | $17,500.00 | $17,500.00 | $17,500.00 | $17,500.00 |
| Insurance | $5,500.00 | $5,500.00 | $5,500.00 | $5,500.00 | $5,500.00 | $5,500.00 | $5,500.00 | $5,500.00 | $5,500.00 | $5,500.00 | $5,500.00 | $5,500.00 |
| Interest Paid | $150.00 | $150.00 | $150.00 | $150.00 | $150.00 | $150.00 | $150.00 | $150.00 | $150.00 | $150.00 | $150.00 | $150.00 |
| Inventory Software | $750.00 | $750.00 | $750.00 | $750.00 | $750.00 | $750.00 | $750.00 | $750.00 | $750.00 | $750.00 | $750.00 | $750.00 |
| Lawncare | $1,000.00 | $1,000.00 | $1,000.00 | $1,000.00 | $1,000.00 | $1,000.00 | $1,000.00 | $1,000.00 | $1,000.00 | $1,000.00 | $1,000.00 | $1,000.00 |
| Professional Services | $1,000.00 | $1,000.00 | $1,000.00 | $1,000.00 | $1,000.00 | $1,000.00 | $1,000.00 | $1,000.00 | $1,000.00 | $1,000.00 | $1,000.00 | $1,000.00 |
| Office Expenses & Supplies | $750.00 | $750.00 | $750.00 | $750.00 | $750.00 | $750.00 | $750.00 | $750.00 | $750.00 | $750.00 | $750.00 | $750.00 |
| Contractors | $500.00 | $500.00 | $500.00 | $500.00 | $500.00 | $500.00 | $500.00 | $500.00 | $500.00 | $500.00 | $500.00 | $500.00 |
| Payoneer Charges & Fees | $500.00 | $500.00 | $500.00 | $500.00 | $500.00 | $500.00 | $500.00 | $500.00 | $500.00 | $500.00 | $500.00 | $500.00 |
| Paypal Fees | $600.00 | $600.00 | $600.00 | $600.00 | $600.00 | $600.00 | $600.00 | $600.00 | $600.00 | $600.00 | $600.00 | $600.00 |
| Payroll & Related | $70,000.00 | $70,000.00 | $70,000.00 | $70,000.00 | $70,000.00 | $70,000.00 | $70,000.00 | $70,000.00 | $70,000.00 | $70,000.00 | $70,000.00 | $70,000.00 |
| Repairs & Maintenance | $45.00 | $45.00 | $45.00 | $45.00 | $45.00 | $45.00 | $45.00 | $45.00 | $45.00 | $45.00 | $45.00 | $45.00 |
| Shipping Supplies | $9,500.00 | $9,500.00 | $9,500.00 | $9,500.00 | $9,500.00 | $9,500.00 | $9,500.00 | $9,500.00 | $9,500.00 | $9,500.00 | $9,500.00 | $9,500.00 |
| Shipping & Freight | $54,000.00 | $54,000.00 | $54,000.00 | $54,000.00 | $54,000.00 | $54,000.00 | $54,000.00 | $54,000.00 | $54,000.00 | $54,000.00 | $54,000.00 | $54,000.00 |
| Utilities | $1,400.00 | $1,400.00 | $1,400.00 | $1,400.00 | $1,400.00 | $1,400.00 | $1,400.00 | $1,400.00 | $1,400.00 | $1,400.00 | $1,400.00 | $1,400.00 |
| Walmart Fees | $13,000.00 | $13,000.00 | $13,000.00 | $13,000.00 | $13,000.00 | $13,000.00 | $13,000.00 | $13,000.00 | $13,000.00 | $13,000.00 | $13,000.00 | $13,000.00 |
| Waste & Recycling | $800.00 | $800.00 | $800.00 | $800.00 | $800.00 | $800.00 | $800.00 | $800.00 | $800.00 | $800.00 | $800.00 | $800.00 |
| Website | $750.00 | $750.00 | $750.00 | $750.00 | $750.00 | $750.00 | $750.00 | $750.00 | $750.00 | $750.00 | $750.00 | $750.00 |
| **Total Operating Expenses** | **$218,245.00** | **$218,245.00** | **$218,245.00** | **$218,245.00** | **$218,245.00** | **$218,245.00** | **$218,245.00** | **$218,245.00** | **$218,245.00** | **$218,245.00** | **$218,245.00** | **$218,245.00** |
| **PLAN PAYMENTS** | | | | | | | | | | | | |
| Class 1 Priority | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| Class 2 SBA | $726.52 | $726.52 | $726.52 | $726.52 | $726.52 | $726.52 | $726.52 | $726.52 | $726.52 | $726.52 | $726.52 | $726.52 |
| Class 3 Ameris Bank | $5,627.37 | $5,627.37 | $5,627.37 | $5,627.37 | $5,627.37 | $5,627.37 | $5,627.37 | $5,627.37 | $5,627.37 | $5,627.37 | $5,627.37 | $5,627.37 |
| Class 4 Amazon | $7,066.82 | $7,066.82 | $7,066.82 | $7,066.82 | $7,066.82 | $7,066.82 | $7,066.82 | $7,066.82 | $7,066.82 | $7,066.82 | $7,066.82 | $7,066.82 |
| **Total Plan Payments** | **$13,420.71** | **$13,420.71** | **$13,420.71** | **$13,420.71** | **$13,420.71** | **$13,420.71** | **$13,420.71** | **$13,420.71** | **$13,420.71** | **$13,420.71** | **$13,420.71** | **$13,420.71** |
| **NET CASH FLOW** | **$2,334.29** | **$2,334.29** | **$2,334.29** | **$2,334.29** | **$2,334.29** | **$2,334.29** | **$2,334.29** | **$2,334.29** | **$2,334.29** | **$2,334.29** | **$2,334.29** | **$2,334.29** |

### 2026

| | January | February | March | April | May | June |
|---|---|---|---|---|---|---|
| **REVENUE** | | | | | | |
| Gross Revenue | $350,000.00 | $350,000.00 | $350,000.00 | $350,000.00 | $350,000.00 | $350,000.00 |
| Cost of Goods Sold | $108,000.00 | $108,000.00 | $108,000.00 | $108,000.00 | $108,000.00 | $108,000.00 |
| *Net Revenue* | *$242,000.00* | *$242,000.00* | *$242,000.00* | *$242,000.00* | *$242,000.00* | *$242,000.00* |
| **EXPENSES** | | | | | | |
| Accounting Software | $35.00 | $35.00 | $35.00 | $35.00 | $35.00 | $35.00 |
| Advertising & Marketing | $250.00 | $250.00 | $250.00 | $250.00 | $250.00 | $250.00 |
| Amazon Advertising | $1,100.00 | $1,100.00 | $1,100.00 | $1,100.00 | $1,100.00 | $1,100.00 |
| Amazon Seller Fees and Charges | $37,500.00 | $37,500.00 | $37,500.00 | $37,500.00 | $37,500.00 | $37,500.00 |
| Amazon Shipping Fees | $400.00 | $400.00 | $400.00 | $400.00 | $400.00 | $400.00 |
| Bank Charges | $650.00 | $650.00 | $650.00 | $650.00 | $650.00 | $650.00 |
| Dues and Subscriptions | $600.00 | $600.00 | $600.00 | $600.00 | $600.00 | $600.00 |
| Ebay Fees | $17,500.00 | $17,500.00 | $17,500.00 | $17,500.00 | $17,500.00 | $17,500.00 |
| Insurance | $5,500.00 | $5,500.00 | $5,500.00 | $5,500.00 | $5,500.00 | $5,500.00 |
| Interest Paid | $150.00 | $150.00 | $150.00 | $150.00 | $150.00 | $150.00 |
| Inventory Software | $750.00 | $750.00 | $750.00 | $750.00 | $750.00 | $750.00 |
| Lawncare | $1,000.00 | $1,000.00 | $1,000.00 | $1,000.00 | $1,000.00 | $1,000.00 |
| Professional Services | $1,000.00 | $1,000.00 | $1,000.00 | $1,000.00 | $1,000.00 | $1,000.00 |
| Office Expenses & Supplies | $750.00 | $750.00 | $750.00 | $750.00 | $750.00 | $750.00 |
| Contractors | $500.00 | $500.00 | $500.00 | $500.00 | $500.00 | $500.00 |
| Payoneer Charges & Fees | $500.00 | $500.00 | $500.00 | $500.00 | $500.00 | $500.00 |
| Paypal Fees | $600.00 | $600.00 | $600.00 | $600.00 | $600.00 | $600.00 |
| Payroll & Related | $75,000.00 | $75,000.00 | $75,000.00 | $75,000.00 | $75,000.00 | $75,000.00 |
| Repairs & Maintenance | $45.00 | $45.00 | $45.00 | $45.00 | $45.00 | $45.00 |
| Shipping Supplies | $10,000.00 | $10,000.00 | $10,000.00 | $10,000.00 | $10,000.00 | $10,000.00 |
| Shipping & Freight | $56,000.00 | $56,000.00 | $56,000.00 | $56,000.00 | $56,000.00 | $56,000.00 |
| Utilities | $1,400.00 | $1,400.00 | $1,400.00 | $1,400.00 | $1,400.00 | $1,400.00 |
| Walmart Fees | $13,000.00 | $13,000.00 | $13,000.00 | $13,000.00 | $13,000.00 | $13,000.00 |
| Waste & Recycling | $800.00 | $800.00 | $800.00 | $800.00 | $800.00 | $800.00 |
| Website | $750.00 | $750.00 | $750.00 | $750.00 | $750.00 | $750.00 |
| **Total Operating Expenses** | **$225,745.00** | **$225,745.00** | **$225,745.00** | **$225,745.00** | **$225,745.00** | **$225,745.00** |
| **PLAN PAYMENTS** | | | | | | |
| Class 1 Priority | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |

| | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|
| *Class 2 SBA* | $726.52 | $726.52 | $726.52 | $726.52 | $726.52 | $726.52 | | | | |
| *Class 3 Ameris Bank* | $5,627.37 | $5,627.37 | $5,627.37 | $5,627.37 | $5,627.37 | $5,627.37 | | | | |
| *Class 4 Amazon* | $7,066.82 | $7,066.82 | $7,066.82 | $7,066.82 | $7,066.82 | $7,066.82 | | | | |
| | | | | | | | | | | |
| **Total Plan Payments** | **$13,420.71** | **$13,420.71** | **$13,420.71** | **$13,420.71** | **$13,420.71** | **$13,420.71** | | | | |
| | | | | | | | | | | |
| **NET CASH FLOW** | **$2,834.29** | **$2,834.29** | **$2,834.29** | **$2,834.29** | **$2,834.29** | **$2,834.29** | | | | |

# Exhibit
# C

**UNITED STATES BANKRUPTCY COURT**
**MIDDLE DISTRICT OF FLORIDA**
**JACKSONVILLE DIVISION**

In re:

PICCARD PETS SUPPLIES, CORP.,                    Case No.: 3:23-bk-00210-JAB

　　　　　　Debtor.                                          Chapter 11

_____/

**MOTION FOR APPROVAL OF STIPULATION FOR TREATMENT UNDER**
**CHAPTER 11 PLAN BETWEEN DEBTOR AND AMERIS BANK**

---

**NOTICE OF OPPORTUNITY TO OBJECT AND REQUEST FOR HEARING**

If you object to the relief requested in this paper you must file a response with the Clerk of Court at 300 North Hogan Street, Suite 3-150, Jacksonville, FL 32202 within fourteen (14) days from the date of the attached proof of service, plus an additional three days if this paper was served on any party by U.S. Mail.

If you file and serve a response within the time permitted, the Court will either notify you of a hearing date or the Court will consider the response and grant or deny the relief requested in this paper without a hearing. If you do not file a response within the time permitted, the Court will consider that you do not oppose the relief requested in the paper, and the Court may grant or deny the relief requested without further notice or hearing.

You should read these papers carefully and discuss them with your attorney if you have one. If the paper is an objection to your claim in this bankruptcy case, your claim may be reduced, modified, or eliminated if you do not timely file and serve a response.

---

Ameris Bank, a Georgia banking corporation ("Ameris"), as successor by merger with Fidelity Bank ("Fidelity"), pursuant to Rules 4001(d) and 9019, Federal Rules of Bankruptcy Procedure and Local Bankruptcy Rule 2002-2, files this Motion for Approval of the Stipulation for Treatment Under Chapter 11 Plan between debtor, Piccard Pets Supplies, Corp., formerly known as Piccard Meds 4 Pets Corp ("Debtor"), and Ameris. A copy of the parties' Stipulation

for Treatment Under Chapter 11 Plan is attached hereto as **Exhibit A** (the "Stipulation")[1] and incorporated herein.  In support thereof,  states as follows:

1.      The Stipulation provides, among other things, that Debtor shall treat Ameris as a fully secured creditor under 11 U.S.C. § 506(b), and Ameris shall be entitled to a secured claim for the full amount of $873,406.34.

2.      The Stipulation further provides that Ameris' allowed secured claim will be amortized over twenty-five (25) years at 6% interest per annum with a balloon payment for the remaining principal balance due 120 months after the effective date of the Plan.

3.      The standard for evaluating a proposed compromise pursuant to Rule 9019, Federal Rules of Bankruptcy Procedure, is whether the compromise is in the best interest of the estate.  See, *Wallis v. Justice Oaks II, Ltd., (In re Justice Oaks II, Ltd.)*, 898 F.2d 1544 (11th Cir. 1990), *In re Charter Co.*, 72 B.R. 70 (Bankr. M.D. Fla. 1987).  To approve a compromise, the Court need not determine which party would ultimately prevail, but only that the matter was open to reasonable doubts.  *In re Teletronics, Inc.*, 762 F.2d 185 (2d Cir. 1985).

4.      The Stipulation is in the best interests of the Debtor, its estate, and its creditors.

5.      Notice of this Motion has been provided pursuant to Rule 4001(d), Federal Rules of Bankruptcy Procedure.

WHEREFORE, Ameris Bank respectfully requests that this Court enter an Order in the form attached hereto as **Exhibit B** approving the Stipulation and for such other relief as the Court deems just.

---

[1] Defined terms from the Stipulation are incorporated by reference herein.

69416218;1

Dated: March 22, 2023                      AKERMAN LLP

                                           By: /s/ Christian P. George
                                               Christian P. George
                                               Florida Bar Number: 41055
                                               Email:  christian.george@akerman.com
                                               Amy M. Leitch
                                               Florida Bar Number: 90112
                                               Email: amy.leitch@akerman.com
                                               50 North Laura Street, Suite 3100
                                               Jacksonville, FL  32202
                                               Telephone:  (904) 798-3700
                                               Facsimile:  (904) 798-3730

                                           Attorneys for Ameris Bank

<b><u>CERTIFICATE OF SERVICE</u></b>

    I HEREBY CERTIFY that a copy of the foregoing was furnished on March 22, 2023, either by electronic notification or U.S. mail, postage prepaid and properly addressed, to:

Piccard Pets Supplies, Corp.                Thomas C. Adam, Esq.
5521 Blanding Blvd.                         Adam Law Group, P.A.
Jacksonville, FL 32244                      2258 Riverside Ave
                                           Jacksonville, FL 32204


Robert Altman, Subchapter V Trustee         Jill E Kelso
PO Box 922                                  Office of the United States Trustee
Palatka, FL 32178-0922                      400 W. Washington Street
                                           Suite 1100
                                           Orlando, FL 32801


and all parties on the attached mailing matrix.

                                           /s/ Christian P. George
                                           Attorney

Label Matrix for local noticing
113A-3
Case 3:23-bk-00210-JAB
Middle District of Florida
Jacksonville
Wed Mar 22 16:45:06 EDT 2023

Ameris Bank
c/o Christian P. George, Esq.
Akerman LLP
50 North Laura St.
Suite 3100
Jacksonville, FL 32202-3659

Jacob A. Brown
Jacksonville
, FL

Duval County Tax Collector
Office of General Counsel
c/o Wendy Mummaw
117 West Duval Street
Suite 480
Jacksonville, FL 32202-3734

Piccard Pets Supplies, Corp.
5521 Blanding Blvd.
Jacksonville, FL 32244-1945

Amazon Capital Services, Inc.
410 Terry Avenue North
Seattle, WA 98109-5210

Amazon Lending
410 Terry Ave N.
Seattle, WA 98109-5210

American Express Business Gold Rewards
P.O. Box 6031
Carol Stream, IL 60197-6031

American Express National Bank
c/o Becket and Lee LLP
PO Box 3001
Malvern  PA 19355-0701

American Express Platinum Card
P.O. Box 6031
Carol Stream, IL 60197-6031

American Express Simply Cash Business
P.O. Box 6031
Carol Stream, IL 60197-6031

Ameris Bank
GGL Department
3490 Piedmont Rd. NE Ste. 750
Atlanta, GA 30305-4829

Ameris Bank
c/o Amy M. Leitch, Esq.
Akerman LLP
50 N. Laura St., Suite 3100
Jacksonville, FL 32202-3659

Ameris Bank
c/o Christian P. George, Esq.
Akerman LLP
50 N. Laura St., Suite 3100
Jacksonville, FL 32202-3659

Ameris Bank Business Card
Cardmember Service
P.O. Box 790408
Saint Louis, MO 63179-0408

Amerisource Bergen
MWI Animal Health
P.O. Box 840537
Dallas, TX 75284-0537

Brownstein Hyatt Faber Schreck LLP
410 Seventeenth Street Ste. 2200
Denver, CO 80202-4432

Capital One Spark Business
P.O. Box 60519
City of Industry, CA 91716-0519

Celtic Bank
268 S. State Street Ste. 300
Salt Lake City, UT 84111-5314

(p)JPMORGAN CHASE BANK  N A
BANKRUPTCY MAIL INTAKE TEAM
700 KANSAS LANE FLOOR 01
MONROE LA 71203-4774

(p)CLOUDFUND LLC
400 RELLA BOULEVARD SUITE 165-101
SUFFERN NY 10901-4241

Davis Wright Tremaine LLP
920 Fifth Avenue Ste. 3300
Seattle, WA 98104-1610

Divvy
13707 S. 200 West Ste. 100
Draper, UT 84020-2443

Duval County Tax Collector
231 Forsyth St.  #130
Jacksonville FL 32202-3380

Duval County Tax Collector
c/o WENDY L. MUMMAW
117 W. Duval Street, Suite 480
Jacksonville, FL 32202-5721

Duval County Tax Collector
c/o Wendy Mummaw, Asst. General Counsel
Office of General Counsel
City of Jacksonville
117 W. Duval St. Suite 480
Jacksonville, FL 32202-5721

Feedvisor
96 spring street 7th floor
New York, NY 10012-3923

Florida Dept. of Revenue
Bankruptcy Unit
P.O. Box 6668
Tallahassee, FL 32314-6668

Fox Capital Group Inc.
1920 E. Hallandale Beach Blvd. Ste. 503
Hallandale, FL 33009-4723

Internal Revenue Service
PO Box 7346
Philadelphia, PA  19101-7346

JPMorgan Chase Bank, N.A.
s/b/m/t Chase Bank USA, N.A.
c/o Robertson, Anschutz, Schneid,
Crane & Partners, PLLC
6409 Congress Avenue, Suite 100
Boca Raton, FL 33487-2853

Jill E Kelso
Office of the United States Trustee
400 W. Washington Street
Suite 1100
Orlando, FL 32801-2440

Kong Company LLC
16191 Table Mountain Parkway
Golden, CO 80403-1641

Marlon Martinez
5521 Blanding Blvd
Jacksonville, FL 32244-1945

ODK Capital, LLC
1400 Broadway
New York, NY 10018-5300

On Deck Capital
Client Services Center
4700 W. Daybreak Pkwy., Ste. 200
South Jordan, UT 84009-5133

Secretary of the Treasury
15th & Pennsylvania Ave., NW
Washington, DC 20220-0001

Sellers Funding Corp.
1290 Weston Rd. Ste. 306
Fort Lauderdale, FL 33326-1973

U.S. Securities & Exchange Commission
Office of Reorganization
950 East Paces Ferry Road, N.E.
Suite 900
Atlanta, GA 30326-1382

US Small Business Administration
14925 Kingsport Rd.
Fort Worth, TX 76155-2243

United States Attorney
300 North Hogan St Suite 700
Jacksonville, FL 32202-4204

Vorys, Sater, Seymour and Pease LLP
301 E. 4th Street Ste. 3500
Cincinnati, OH 45202-4257

White Road Capital LLC
d/b/a GFE Holdings
27-01 Queens Plaza North Ste. 802
Long Island City, NY 11101-4020

Zachter PLLC
30 Wall Street 8th Floor
New York, NY 10005-2205

Robert Altman +
PO Box 922
Palatka, FL 32178-0922

United States Trustee - JAX 11 +
Office of the United States Trustee
George C Young Federal Building
400 West Washington Street, Suite 1100
Orlando, FL 32801-2210

Christian P George +
Akerman LLP
50 N. Laura Street, Suite 3100
Jacksonville, FL 32202-3659

Thomas C Adam +
Adam Law Group, P.A.
2258 Riverside Ave
Jacksonville, FL 32204-4620

Wendy L Mummaw +
Office of General Counsel
117 W. Duval St. , Suite 480
Jacksonville, FL 32202-3734

Note: Entries with a '+' at the end of the
name have an email address on file in CMECF

The preferred mailing address (p) above has been substituted for the following entity/entities as so specified
by said entity/entities in a Notice of Address filed pursuant to 11 U.S.C. 342(f) and Fed.R.Bank.P. 2002 (g)(4).

Chase Ultimate Rewards
P.O. Box 15123
Wilmington, DE 19850

Cloudfund LLC
400 Rella Blvd. Ste. 165-101
Suffern, NY 10901

The following recipients may be/have been bypassed for notice due to an undeliverable (u) or duplicate (d) address.

(d)Jill E Kelso +
Office of the United States Trustee
400 W. Washington Street
Suite 1100
Orlando, FL 32801-2440

End of Label Matrix
Mailable recipients    49
Bypassed recipients     1
Total                  50

# Exhibit A

**UNITED STATES BANKRUPTCY COURT**
**MIDDLE DISTRICT OF FLORIDA**
**JACKSONVILLE DIVISION**

In re:

PICCARD PETS SUPPLIES, CORP.,                    Case No.: 3:23-bk-00210-JAB

               Debtor.                                  Chapter 11

_____/

## STIPULATION FOR TREATMENT UNDER CHAPTER 11 PLAN
## BETWEEN DEBTOR AND AMERIS BANK

Ameris Bank, a Georgia banking corporation ("Ameris"), as successor by merger with Fidelity Bank ("Fidelity"), and the debtor, Piccard Pets Supplies, Corp., formerly known as Piccard Meds 4 Pets Corp ("Debtor") hereby stipulate and agree as follows:

### Background and Parties

1.      On January 30, 2023 (the "Petition Date"), Debtor filed a voluntary petition for relief under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code"), initiating the above-styled bankruptcy case (the "Bankruptcy Case").

### The Ameris Loan and Loan Documents

2.      On or about October 30, 2018, Debtor executed and delivered to Fidelity that certain Loan Agreement (the "Loan Agreement").

3.      On or about October 30, 2018, Debtor executed and delivered to Fidelity that certain U.S. Small Business Administration Note in the original principal amount of $945,000.00 (the "Note").

4.      The Note is secured by, among other things, that certain Mortgage and Security Agreement (the "Mortgage") dated October 30, 2018, which was executed by Debtor and recorded at Official Records Book 18585, Page 1506 of the Public Records of Duval County,

69416162;1

Florida.  The Mortgage secures certain real property owned by Debtor located in Duval County, Florida as more particularly described in the Mortgage and on **Exhibit A** hereto (the "Real Property").  The Real Property has an address of 5521 Blanding Blvd., Jacksonville, Florida 32244. The Mortgage further grants Fidelity a security interest in all rents of the Real Property (the "Rents").

5.      The Note is further secured by that certain Assignment of Leases and Rents (the "Assignment of Rents") which Debtor executed and delivered to Fidelity on or about October 30, 2018, and was subsequently recorded at Official Records Book 18585, Page 1526 of the Public Records of Duval County, Florida. The Assignment of Rents further grants a security interest in the Rents.

6.      The Note is further secured by, among other things, that certain U.S. Small Business Administration Security Agreement (the "Security Agreement") which was executed by Debtor, and delivered to Fidelity on or about October 30, 2018. The Security Agreement grants Fidelity a security interest in all assets of Debtor, including, without limitation, all equipment, fixtures, inventory, accounts, instruments, chattel paper, and general intangibles, as more particularly described therein (the "Personal Property").

7.      Fidelity perfected its security interest in the Personal Property by causing a UCC Financing Statement to be recorded in the Florida Secured Transaction Registry under instrument number 201806923996 and in the Real Property by causing a UCC Financing Statement to be recorded at Official Records Book 18585, Page 1536 of the Public Records of Duval County, Florida (collectively, the "UCCs").

8.      On or around July 1, 2019, Fidelity, the original lender of the loan, merged with and into Ameris.

69416162;1

9.      By virtue of the facts set forth above, Ameris owns, holds and possesses the Loan Agreement, Note, Mortgage, Assignment of Rents, Security Agreement, UCCs, and Guarantees (collectively, the "Loan Documents").

10.      Ameris has a claim secured by all of Debtor's existing collateral in the amount of $873,406.34 (Claim 5) (the "Allowed Secured Claim").

11.      It is expressly agreed that Ameris is a secured creditor, shall be treated as a fully secured creditor under 11 U.S.C. § 506(b), is entitled to a secured claim for the full amount of $873,406.34.

12.      The Allowed Secured Claim will be amortized over twenty-five (25) years at 6% interest per annum with a balloon payment for the remaining principal balance due 120 months after the effective date of the Plan.

13.      Except as otherwise expressly provided herein, all remaining terms of the Note and Mortgage shall govern the treatment of Ameris' Allowed Secured Claim.

14.      Except as modified herein the terms and conditions of the Loan Documents remain in full force and effect.

15.      The provisions of this Stipulation shall be binding upon and inure to the benefit of the Debtor, any reorganized debtor, and the Bank and its successors and assigns.

16.      This Stipulation is subject to the approval of the Bankruptcy Court and Debtor and Ameris agree to support this Stipulation and file any motions or other papers necessary for approval of this Stipulation.  In the event this Stipulation or any part thereof is not approved by the Bankruptcy Court or another court of competent jurisdiction, then this Stipulation shall be null and void and of no further force and effect.

69416162;1

17.     The terms contained in this Stipulation will govern during the pendency of the approval process for this Stipulation.

18.     No change, modification or waiver of any provisions to this Stipulation shall be valid or binding unless it is in writing and signed by all parties to this Stipulation.

19.     Except as specifically modified herein, all terms and conditions of and rights under the Loan Documents between Ameris and Debtor shall remain in full force and effect. Debtor also agrees that it will execute standard loan documents in the form of already existing Loan Documents as may be requested or required by Ameris to memorialize the terms of this Stipulation and the Plan.

20.     The terms of this Stipulation are contingent upon the substantial consummation of the Debtor's confirmed Plan. The terms of this Stipulation shall be incorporated into any Plan and/or the Order of Confirmation. In the event of any discrepancy between the terms of this Stipulation and the terms of Debtor's Plan, the terms of this Stipulation shall control the treatment of Ameris' Allowed Secured Claim.

21.     In the event the Bankruptcy Case is dismissed or converted to any other chapter under Title 11 of the United States Bankruptcy Code prior to completion of Debtor's Chapter 11 Plan payments, receipt of a discharge, and entry of a final decree, the terms of this Stipulation shall be void.

4

22.     Ameris shall cast a ballot accepting Debtor's Chapter 11 Plan provided that the Plan incorporates the terms of this Stipulation and Debtor is in compliance with the terms of the Stipulation as of the ballot deadline.

Dated: March 22, 2023

ADAM LAW GROUP, P.A.                          AKERMAN LLP


By: */s/ Thomas C. Adam*                      By: */s/ Christian P. George*
    Thomas C. Adam                                Christian P. George
    Florida Bar No. 648711                        Florida Bar Number: 41055
    2258 Riverside Avenue                         Email: christian.george@akerman.com
    Jacksonville, FL 32202                        Amy M. Leitch
    (904) 329-7249 Telephone                      Florida Bar Number: 90112
    (904) 606-1245 Facsimile                      Email: amy.leitch@akerman.com
    tadam@adamlawgroup.com                        50 North Laura Street, Suite 3100
                                                  Jacksonville, FL  32202
*Attorneys for Debtor*                            Telephone:  (904) 798-3700
                                                  Facsimile:  (904) 798-3730
*Filer's Attestation: Pursuant to Local Rule*
*1001-2(g)(3) regarding signatures, Christian*    *Attorneys for Ameris Bank*
*P. George attests that concurrence in the filing*
*of this paper has been obtained.*

5

69416162;1

# EXHIBIT A

THAT PART OF LOT 4, BLOCK 2, SECTION 18, TOWNSHIP 3 SOUTH, RANGE 26 EAST, JACKSONVILLE HEIGHTS, ACCORDING TO PLAT THEREOF RECORDED IN PLAT BOOK 5, PAGE 93, OF THE CURRENT PUBLIC RECORDS OF DUVAL COUNTY, FLORIDA, MORE PARTICULARLY DESCRIED AS FOLLOWS:

BEGINNING AT THE INTERSECTION OF THE SOUTH LINE OF THE NORTH HALF OF LOT 4, AND THE EAST LINE OF BLANDING BOULEVARD; THENCE RUN NORTH ALONG THE EAST BOUNDARY LINE OF BLANDING BOULEVARD 70 FEET TO A POINT; THENCE NORTHEASTERLY 240 FEET, MORE OR LESS, TO A POINT IN THE WEST LINE OF A DRAINAGE EASEMENT; SAID POINT BEING 75 FEET NORTH OF THE SOUTH LINE OF THE NORTH HALF OF LOT 4; THENCE IN A SOUTHERLY DIRECTION 75 FEET TO A POINT IN THE SOUTH LINE OF THE NORTH HALF OF LOT 4; THENCE RUN WESTERLY 240 FEET, MORE OR LESS, TO THE POINT OF BEGINNING; (EXCEPTING, HOWEVER, THAT PART THEREOF TAKEN BY STATE ROAD DEPARTMENT AS DESCRIBED IN 0. R. BOOK 2841, PAGE 762 AND EXCEPTING ANY PART AS DESCRIBED IN O. R. BOOK 7551, PAGE 1933.)

AND

THAT CERTAIN TRACT OR PARCEL OF LAND, BEING A PART OF LOT 4, BLOCK 2, SECTION 18, TOWNSHIP 3 SOUTH, RANGE 26 EAST, JACKSONVILLE HEIGHTS, ACCORDING TO PLAT THEREOF RECORDED IN PLAT BOOK 5, PAGE 93, OF THE CURRENT PUBLIC RECORDS OF DUVAL COUNTY, FLORIDA, BEING MORE PARTICULARLY DESCRIBED AS FOLLOWS:

COMMENCING AT THE INTERSECTION OF THE SOUTH LINE OF THE NORTH 1/2 OF SAID LOT 4 WITH THE EASTERLY RIGHT OF WAY LINE OF BLANDING BOULEVARD, (A 100 FOOT RIGHT OF WAY AS NOW ESTABLISHED) ; THENCE NORTHERLY ALONG A CURVE TO THE RIGHT IN SAID RIGHT OF WAY LINE, SAID CURVE HAVING A RADIUS OF 5679.65 FEET, A DISTANCE OF 70 FEET. AS MEASURED ALONG A CHORD BEARING NORTH 1 DEGREES 07 MINUTES 40 SECONDS WEST TO A POINT FOR THE POINT OF BEGINNING; THENCE CONTINUE ALONG SAID CURVE A DISTANCE OF 70.2 FEET AS MEASURED ALONG A CHORD BEARING NORTH 00 DEGREES 25 MINUTES 20 SECONDS WEST TO A POINT OF TANGENCY; THENCE NORTH 00 DEGREES 04 MINUTES 10 SECONDS WEST ALONG SAID EASTERLY RIGHT OF WAY LINE OF BLANDING BOULEVARD, 9.8 FEET; THENCE NORTH 89 DEGREES 34 MINUTES 20 SECONDS EAST, 265.24 FEET TO A POINT IN THE WESTERLY BOUNDARY OF AN EASEMENT FOR DRAINAGE; THENCE SOUTH 3 DEGREES 19 MINUTES 20 SECONDS EAST ALONG SAID WESTERLY BOUNDARY, 75 FEET TO A POINT WHICH IS 75 FEET NORTHERLY FROM THE SOUTH LINE OF SAID NORTH 1/2 OF LOT 1; THENCE SOUTH 88 DEGREES 28 MINUTES WEST, 265.14 FEET TO THE POINT OF BEGINNING.

LESS AND EXCEPTING ANY PART LYING WITHIN THE BED OF THE ROAD BY VIRTUE OF ORDER OF TAKING FILED APRIL 15,1966 UNDER FILE NO. 66- 559-L.

6

69416162;1

# Exhibit B

**UNITED STATES BANKRUPTCY COURT**
**MIDDLE DISTRICT OF FLORIDA**
**JACKSONVILLE DIVISION**
**www.flmb.uscourts.gov**

In re:

PICCARD PETS SUPPLIES, CORP.,　　　　　　　Case No.: 3:23-bk-00210-JAB

　　　　　　Debtor.　　　　　　　　　　　Chapter 11

_____/

**ORDER GRANTING MOTION FOR APPROVAL OF**
**STIPULATION FOR TREATMENT UNDER CHAPTER 11 PLAN**
**BETWEEN DEBTOR AND AMERIS BANK**

　　　　THIS CASE is before the Court on the Motion for Approval of Stipulation for Treatment

Under Chapter 11 Plan Between Debtor and Ameris Bank (the "Motion") (Doc. _____)[1] seeking

approval of an agreement between Ameris and the debtor, Piccard Pets Supplies, Corp., formerly

known as Piccard Meds 4 Pets Corp ("Debtor"), regarding plan treatment.　Notice of the

Stipulation and of the opportunity to object to same was furnished to all creditors and parties-in-

interest pursuant to Rules 4001(d) and 9019, Federal Rules of Bankruptcy Procedure and Local

Rule 2002-2 on March 22, 2023, and no objections were filed.　Accordingly, it is,

　　　　**ORDERED**:

---

[1] Defined terms from the Stipulation are incorporated by reference herein.

1.      The Motion is **GRANTED**.

2.      The Stipulation between Debtor and Ameris regarding Treatment Under Chapter 11 Plan is approved and all terms set forth in the Stipulation are enforceable.

3.       Ameris shall have a claim secured by all of Debtor's existing collateral in the amount of $873,406.34 (Claim 5) (the "Allowed Secured Claim").

4.      It is expressly agreed that Ameris is a secured creditor, shall be treated as a fully secured creditor under 11 U.S.C. § 506(b), and is entitled to a secured claim for the full amount of $873,406.34.

5.       The Allowed Secured Claim will be amortized over twenty-five (25) years at 6% interest per annum with a balloon payment for the remaining principal balance due 120 months after the effective date of the Plan.

6.      Except as modified in the Stipulation, the terms and conditions of the Loan Documents remain in full force and effect.

7.      The provisions of the Stipulation shall be binding upon and inure to the benefit of the Debtor, any reorganized debtor, and the Bank and its successors and assigns.

8.      Ameris shall cast a ballot accepting Debtor's Chapter 11 Plan provided that the Plan incorporates the terms of the Stipulation and Debtor is in compliance with the terms of the Stipulation as of the ballot deadline

9.      This Court shall retain jurisdiction to resolve any and all disputes arising from the Stipulation and this Order.


Attorney Christian P. George is directed to serve a copy of this order on interested parties who do not receive service by CM/ECF and to file a proof of service within three days of entry of this order.

**ORDERED.**

**Dated:  April 11, 2023**

Jacob A. Brown
United States Bankruptcy Judge

**UNITED STATES BANKRUPTCY COURT**
**MIDDLE DISTRICT OF FLORIDA**
**JACKSONVILLE DIVISION**
www.flmb.uscourts.gov

In re:

PICCARD PETS SUPPLIES, CORP.,                    Case No.: 3:23-bk-00210-JAB

        Debtor.                                      Chapter 11

_____/

**ORDER GRANTING MOTION FOR APPROVAL OF**
**STIPULATION FOR TREATMENT UNDER CHAPTER 11 PLAN**
**BETWEEN DEBTOR AND AMERIS BANK**

THIS CASE is before the Court on the Motion for Approval of Stipulation for Treatment Under Chapter 11 Plan Between Debtor and Ameris Bank (the "Motion") (Doc. 43)[1] seeking approval of an agreement between Ameris and the debtor, Piccard Pets Supplies, Corp., formerly known as Piccard Meds 4 Pets Corp ("Debtor"), regarding plan treatment.  Notice of the Stipulation and of the opportunity to object to same was furnished to all creditors and parties-in-interest pursuant to Rules 4001(d) and 9019, Federal Rules of Bankruptcy Procedure and Local Rule 2002-2 on March 22, 2023, and no objections were filed.  Accordingly, it is,

**ORDERED**:

---

[1] Defined terms from the Stipulation are incorporated by reference herein.

1.      The Motion is **GRANTED**.

2.      The Stipulation between Debtor and Ameris regarding Treatment Under Chapter 11 Plan is approved and all terms set forth in the Stipulation are enforceable.

3.       Ameris shall have a claim secured by all of Debtor's existing collateral in the amount of $873,406.34 (Claim 5) (the "Allowed Secured Claim").

4.      It is expressly agreed that Ameris is a secured creditor, shall be treated as a fully secured creditor under 11 U.S.C. § 506(b), and is entitled to a secured claim for the full amount of $873,406.34.

5.       The Allowed Secured Claim will be amortized over twenty-five (25) years at 6% interest per annum with a balloon payment for the remaining principal balance due 120 months after the effective date of the Plan.

6.      Except as modified in the Stipulation, the terms and conditions of the Loan Documents remain in full force and effect.

7.      The provisions of the Stipulation shall be binding upon and inure to the benefit of the Debtor, any reorganized debtor, and the Bank and its successors and assigns.

8.      Ameris shall cast a ballot accepting Debtor's Chapter 11 Plan provided that the Plan incorporates the terms of the Stipulation and Debtor is in compliance with the terms of the Stipulation as of the ballot deadline

9.      This Court shall retain jurisdiction to resolve any and all disputes arising from the Stipulation and this Order.

Attorney Christian P. George is directed to serve a copy of this order on interested parties who do not receive service by CM/ECF and to file a proof of service within three days of entry of this order.

# Exhibit
# D

UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

IN RE:

PICCARD PETS SUPPLIES, CORP.     CASE NO.: 3:23-bk-00210-JAB

     Debtor.

_____/

PICCARD PETS SUPPLIES, CORP.     Adversary Proceeding: 3:23-ap-00028

     Plaintiff.

v.

FOX CAPITAL GROUP, INC. d/b/a FOX
BUSINESS FUNDING, WHITE ROAD
CAPITAL, LLC d/b/a GFE HOLDINGS,
SELLERS FUNDING CORP, ODK
CAPITAL, LLC, CELTIC BANK, THE
LAW OFFICES OF KENNETH H.
DRAMER, P.C. and CLOUDFUND, LLC

_____/

## <u>MOTION FOR PRELIMINARY INJUNCTION</u>

Piccard Pets Supplies, Corp., the Plaintiff, Debtor and Debtor-In-Possession (the "Plaintiff" or "Debtor"), moves the Court for the entry of a preliminary injunction, to enjoin Creditors, Fox Capital Group, Inc., d/b/a Fox Business Funding ("Fox"), White Road Capital, LLC d/b/a GFE Holdings ("GFE"), Sellers Funding Corp ("Sellers"), ODK Capital, LLC ("OnDeck"), Celtic Bank ("Celtic Bank"), The Law Offices of Kenneth H. Dramer, P.C., ("Dramer Law") and CloudFund, LLC ("Cloud Fund") (collectively, the "Defendants"), from enforcement of personal guaranties against Debtor's CEO and sole shareholder, Marlon A. Martinez, and in support thereof states:

1

# I. FACTUAL BACKGROUND

1.      Plaintiff is a Florida corporation and is the Debtor in the bankruptcy case styled as: *Piccard Pets Supplies, Corp.*, Case number 3:23-bk-00210-JAB, filed on January 30, 2023.

2.      Defendants, Fox, GFE, Sellers, OnDeck, and Cloudfund are merchant cash advance lenders (collectively "MCA Lenders") who entered into agreements with the Debtor to advance monies in return for a purported purchase of the Debtor's future receivables.

3.      Defendant, Dramer Law, is a professional corporation based in New York. Plaintiff and Dramer Law entered into an agreement for Dramer Law to provide debt relief legal services.

4.      Defendant, Celtic Bank, is based out of Utah and provides small business financing. The Debtor and Celtic Bank entered into an agreement for a small business loan whereby Celtic Bank would have lien on Debtor's cash and receivables.

5.      Additionally, in conjunction with and as a condition to the execution of the agreements with the Debtor all of the Defendants required the principal of the Debtor, Marlon A. Martinez to execute personal guaranties (the "Guaranties")

6.      As of the Petition Date, Marlon A. Martinez is and was the sole owner of the Debtor.

7.      The Debtor's primary business is the retail sale of pet supplies though its brick and mortar storefront location and online store at Amazon.com.

8.      The Debtor has become overwhelmed primarily with a reduction in revenue and trade debt and high interest loan payments including payments to its MCA Lenders.

9.      The Debtor's approximate outstanding balances owed to its MCA Lenders are as follows: Fox ($165,000.00), GFE($55,451.70), Sellers($102,362.50), OnDeck ($269,785.85),  and Cloudfund ($106,170.00), or approximately $698,770.00 in total.

10.     The Debtor's approximate outstanding balance owed to Dramer Law is approximately $22,000.00.

11.     The Debtor's approximate outstanding balance owed to Celtic Bank is approximately $64,872.00.

12.     Subsequent to the Petition Date, Dramer Law and some of the MCA Lenders have threatened to enforce the Guaranties by filing actions against Marlon A. Martinez to seek entry of personal judgments against him.

13.     The collection activity against Marlon A. Martinez is a direct threat to the reorganization efforts of the Debtor as Marlon A. Martinez owns 100% of the outstanding stock of the Debtor and is the CEO.

14.     Mr. Martinez's duties include, but are not limited to running the day-to-day operations of the business, purchasing and accounts receivables.

15.     On March 13, 2023, the Court entered a second Interim Order Approving Debtor-in-Possession's Emergency Motion to Set Officer & Insider Compensation (Doc. No. 40.) This Order provides that Marlon A. Martinez would be awarded a salary of $2,884.62 per week.  Marlon A. Martinez is dependent on his salary his personal and family support.

## II.  STANDARD & JURISDICTION

16.     11 U.S.C. § 362(a) provides in pertinent part that the filing of a bankruptcy

petition "operates as a stay . . . of — (1) the commencement or continuation . . . of a judicial, administrative, or other action or proceeding against the debtor that was or could have been commenced before the commencement of the case under this title."  Additionally, section 105(a) of the Bankruptcy Code provides in relevant part that "[t]he court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title."

17.    "[T]he jurisdiction of bankruptcy courts has been extended to include stays on proceedings involving third parties under the auspices of 28 U.S.C. § 1334(b) . . . ." *Celotex Corp. v. Edwards*, 514 U.S. 300, 305 (U.S. 1995) (quoting *Edward v. Armstrong World Industries, Inc.*, 6 F. 3d 312, 318 (1993)).  A bankruptcy court's jurisdiction may be extended more broadly in the context of a case filed under Chapter 11 of the Bankruptcy Code.  *Id.* at 310 (citing *Continental Ill. Nat. Bank & Trust Co. v. Chicago, R.I. & P.R. Co.*, 294 U.S. 648, 676, 79 L. Ed. 1110, 55 S. Ct. 595 (1935)).

18.    Venue is proper pursuant to 28 U.S.C. § 1391(b).

19.    This is a core proceeding pursuant to 28 U.S.C. §157(b)(2)(A).

20.    "As a court possessing broad equitable powers, the bankruptcy court has the power to stay actions against non-debtors with a sufficient nexus to the estate under 11 U.S.C. § 105."  *In re I.A. Durbin, Inc.*, 1984 Bankr. LEXIS 4923, at *3 (Bankr. S.D. Fla. Sept. 27, 1984).

### III. ARGUMENT AND MEMORANDUM OF LAW

21.    "[T]he test for determining whether a civil proceeding is related to bankruptcy is whether the outcome of the proceeding could conceivably have an effect on the estate being administered in bankruptcy. The proceeding need not necessarily be

against the debtor or against the debtor's property. An action is related to bankruptcy if the outcome could alter the debtor's rights, liabilities, options, or freedom of action (either positively or negatively) and which in any way impacts upon the handling and administration of the bankrupt estate." *In re Lemco Gypsum, Inc.*, 910 F.2d 784, 788 (11th Cir. Ga. 1990) (quoting *Pacor, Inc. v. Higgins*, 743 F.2d 984, 994 (3d Cir. Pa. 1984)[1]); *See, e.g.*, *Celotex Corp.*, 514 U.S. at 308.

22.     The Debtor's principal, Marlon A. Martinez (to whom the Debtor seeks to extend the automatics stay) and the Debtor share an identity of interests so that an action against the Mr. Martinez is essentially an action against the Debtor. Any potential third-party actions against Mr. Martinez will have an adverse impact on the debtor's ability successfully reorganize in the Chapter 11 Bankruptcy Case.

23.     If Defendants are allowed to continue their collection activities and garnish the wages and income on Marlon A. Martinez, it will certainly have a substantial negative impact on the administration of the estate by impairing the Debtor's ability to fund a Plan of Reorganization.

24.     "A party seeking to enjoin a creditor's action against a non-debtor third party must show, among other things, that irreparable harm to the debtor's estate or to the debtor's ability to reorganize will result if the injunction is not granted." *In re Pestritto*, 108 B.R. 850, 852 (Bankr. S.D. Ga. 1989) (citing *In re Continental Airlines, Inc.*, 61 B.R. 758, 781 (S.D. Tex. 1986); *Matter of Uterwyck Corp.*, 36 B.R. 533, 534 (M.D. Fla. 1983)).

---

[1]     The United States Supreme Court "has effectively overruled *Pacor* with respect to its construction of the 28 U.S.C. § 1447(d) . . . . " *Fledderman v. Glunk* (*In re Glunk*), 2006 Bankr. LEXIS 4756, at *7 n.3 (Bankr. E.D. Pa. Aug. 18, 2006) (citing *Things Remembered, Inc. v. Petrarca*, 516 U.S. 124, 116 S. Ct. 494, 133 L. Ed. 2d 461 (1995)). The *Glunk* Court went on to state, "However, the Pacor test for the boundaries of non-core jurisdiction continues to be widely followed." *Id.*

"Injunctive relief in favor of non-debtors must be considered an extraordinary remedy to be granted only when a significant and direct impact on the reorganization proceedings is threatened." *Id*. (*quoting Continental Airlines*, 61 B.R. at 781).

25.     Here, Debtor's estate will suffer irreparable harm unless Defendants collection activities on the Guaranties are stayed pending the successful resolution of the Debtor's Chapter 11 Case.

26.     Indeed, unless the collection activities are enjoined, the Debtor will likely not have sufficient income or assets to adequately fund a Plan of Reorganization.

27.     In considering the scope of the automatic stay, bankruptcy courts have consistently held that the automatic stay can be extended to actions that are essentially, although not technically, against a debtor or that would interfere with a debtor's reorganization proceedings.  Such an application of section 362(a) is consistent with Congress's intent "to cease creditor collection efforts of antecedent debts, to protect assets of the debtor's estate, to provide for the equitable treatment of all creditors and to ensure successful reorganization efforts." *W.R. Grace & Co. v. Chakarian* (*In re W.R. Grace & Co.*), 2004 Bankr. LEXIS 579, at *7 (Bankr. D. Del. Apr. 29, 2004) (citing *Matter of Frenville*, 744 F.2d 332 (3d Cir. 1984), *cert. denied* 469 U.S. 1160, 83 L. Ed. 2d 925, 105 S. Ct. 911 (1985)).

28.     Enjoining the collection efforts with respect to a third party is appropriate where "is such an identity between the debtor and the third-party defendant that the debtor may be said to be the real party defendant" such that "a judgment against the third-party defendant will in effect be a judgment or finding against the debtor." Id. (citations omitted).

29.     Here, the collection activities on the Guaranties against Marlon A. Martinez operates a de facto collection activity against the Debtor's estate since Marlon A. Martinez is dependent on his salary his personal and family support. It would be difficult or impossible for Marlon A. Martinez to perform these services for the Debtor while defending collection activity of nearly $700,000.00 directed against him. The time and resources to defend such actions will necessarily distract Marlon A. Martinez from his managerial duties with the Debtor.

30.     Additionally, if the Defendants are able to obtain personal judgments against Marlon A. Martinez then his 100% equity ownership in the Debtor would be in jeopardy which could result in disruption to Debtor's business operations. In the event Marlon A. Martinez's ownership interest is seized, the Debtor would not be able to operate or generate revenues.

31.     While the Debtor has not filed a Plan of Reorganization, the Debtor has a strong likelihood of successful reorganization in the Subchapter V Chapter 11 Case.  In this regard and based on the information provided in the Debtor' Cash Collateral Budget and financial statements, and tax returns, the Debtor has sufficient revenues to pay its normal operating expenses and will likely have sufficient amounts to cover plan payments. S*ee, Debtor's Cash Collateral Budget and Notice of Filing Cash Flow Statement, attached hereto as Exhibit "1."*

32.     Any potential harm to the Defendants that could result from the imposition of an injunction is far outweighed by the benefit the injunction provides to the Estate. As previously stated, the collection activities by the Defendants would interfere with the Debtor's ability to operate and generate revenue that is needed to fund a successful plan of

7

reorganization. This would negatively affect the interests of all creditors and interested parties.

33.    In addition, the public interests are supported by the entry of an injunction and the successfully reorganization of the Debtor as an ongoing business concern. The Debtor provides employment for approximately 15 people whom pay taxes and support the local economy. The Debtor pays payroll, sales, and other tax revenues that would be lost if they cannot successfully reorganize.

34.    Accordingly, Defendants must be enjoined from further efforts to collect the Guaranties against Marlon A. Martinez due to the severe detrimental impact of the Debtor's estate.

WHEREFORE the Debtor requests the Court enjoin Defendants from collection action on the Guaranties against Debtor's CEO and sole shareholder, Marlon A. Martinez, extend the automatic stay against the Defendants to prevent pre-petition claims and/or judgments from being pursued or collected against Marlon A. Martinez, order the Defendants to withdraw any post-petition judgments against Marlon A. Martinez based on pre-petition claims against the Debtor, and for any and all other relief deemed appropriate under the circumstances.

Respectfully Submitted on April 4, 2023.

/s/ Thomas C. Adam
Thomas C. Adam
Florida Bar No. 648711
ADAM LAW GROUP, P.A.
2258 Riverside Avenue
Jacksonville, FL 32204
(904) 329-7249 Phone
(904) 606-1245 Facsimile
tadam@adamlawgroup.com

8

**Certificate of Service**

I hereby certify that a copy of the forgoing has been sent to and all parties having appeared in this case through the Court's CM/ECF system all parties on the attached mailing matrix via Regular U.S. Mail on April 4, 2023

/s/ Thomas Adam

**Service List**

FOX CAPITAL GROUP, INC. DBA FOX BUSINESS FUNDING
BRADLEY ARANT BOULT CUMMINGS LLP
C/O ELIZABETH R. BRUSA
100 N. TAMPA STREET
SUITE 2200
TAMPA, FL 33602

WHITE ROAD CAPITAL, LLC D/B/A GFE HOLDINGS
27–01 QUEENS PLAZA NORTH STE. 802
LONG ISLAND CITY, NY 11101

SELLERS FUNDING CORP
ZACHTER, PLLC
30 WALL STREET
8TH FLOOR
NEW YORK, NY 10005

ODK CAPITAL, LLC
1400 BROADWAY
NEW YORK, NY 10018

CELTIC BANK
268 S. STATE ST, SUITE 300
SALT LAKE CITY, UT 84111

THE LAW OFFICES OF KENNETH H. DRAMER, P.C
626 RXR PLAZA
UNIONDALE, NY 11556

CLOUDFUND, LLC
400 RELLA BLVD. STE. 165–101
SUFFERN, NY 10901

# Exhibit
# 1

UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

In re:

PICCARD PET SUPPLIES,
CORP.

Case No. 3:23-bk-00210-JAB
Chapter 11
*SubChapter V*

Debtor.

_____/

## NOTICE OF FILING CASH FLOW STATEMENT

**PLEASE TAKE NOTICE** that Debtor, Piccard Pet Supplies Corp., by and through the

undersigned counsel, gives notice of filing its Cash Flow Statement pursuant to 11 U.S.C. § 1116

of the United States Bankruptcy Code, on this 2nd Day of February, 2023.

/s/ *Thomas C. Adam*
Thomas C. Adam
Florida Bar No. 648711
ADAM LAW GROUP, P.A.
2258 Riverside Ave
Jacksonville, FL 32204
(904) 329-7249 Phone
(904) 606-1245 Facsimile
tadam@adamlawgroup.com

## PROOF OF SERVICE

A true and correct copy of the foregoing *Notice of Filing Cash Flow Statement* has been

sent by electronic transmission to all parties having entered an appearance in this case via the

Court's CMECF system on this 2nd day of February, 2023.

/s/ Thomas C. Adam
Thomas C. Adam

**Cash Flow Statement**

# Piccard Meds 4 Pets Corp
## Profit and Loss
### January - March, 2022

|  | Total |
|---|---|
| **Income** | |
| 001 Piccard Meds 4 Pets - Shopify Sales | 57,842.95 |
| 002 Walmart Sales | 293,691.07 |
| 003 Amazon US Sales | 841,867.30 |
| 004 Amazon CA Sales | 162,281.85 |
| 006 Amazon UK Sales | 20,713.35 |
| 010 Amazon Europe Sales | 3,513.40 |
| 015 Ebay Sales | 220,374.55 |
| 016 Miscellaneous Sales | 1,298.49 |
| 018 Reserve | 16,419.60 |
| 019 Sears Sales | 162.33 |
| 020 Facebook | 236.75 |
| Discounts/Refunds Given | (38,517.05) |
| **Total Income** | **1,579,884.59** |
| **Cost of Goods Sold** | |
| Contract Virtual Labor | 11,341.22 |
| Purchases - Merchandise | 821,559.09 |
| Shipping, Freight & Delivery | |
| DHL | 614.29 |
| Ebay | 103.58 |
| Fedex | 29,101.94 |
| Globelogistic - Ascendia | 61,801.09 |
| Groovepacker.com | 1,200.00 |
| ShipStation | 435.00 |
| UPS | 2,062.97 |
| USPS Stamps - Endicia | 172,607.18 |
| **Total Shipping, Freight & Delivery** | 267,926.05 |
| **Total Cost of Goods Sold** | **1,100,826.36** |
| **Gross Profit** | **479,058.23** |
| **Expenses** | |
| Advertising & Marketing | 17,562.96 |
| Contract Labor | 617.51 |
| Interest Paid | 18,943.53 |
| Other Deductions | |
| Answering Service | 259.88 |
| Auto & Truck Expense | 522.72 |
| Bank Charges & Fees | 2,817.36 |
| Cleaning Expenses | 2,360.00 |
| Dues & subscriptions | 6,148.86 |
| Email Management | 5,170.67 |
| Fees | |
| Amazon Fees | 249,987.20 |
| Amazon Inventory Recovery Fees | 654.63 |

| | |
|---|---:|
| **Ebay Fees** | 15,448.53 |
| **PayPal Fees** | 3,338.68 |
| **Shopify Fees** | 2,044.01 |
| **TaxValet Fees** | 5,342.40 |
| **Walmart Commission Fee** | 42,322.19 |
| **Walmart Fees** | 10.50 |
| **Total Fees** | 319,148.14 |
| **Insurance** | |
| **Auto Insurance** | 1,355.85 |
| **Health Insurance** | 12,803.49 |
| **Liability** | 445.00 |
| **Workman's Comp** | 1,979.21 |
| **Total Insurance** | 16,583.55 |
| **Internet** | 1,808.70 |
| **Legal & Professional Services** | 11,603.14 |
| **Meals & Entertainment** | 433.20 |
| **Office Expense & Supplies** | 388.51 |
| **Property tax** | 4,743.53 |
| **Rental Equipment** | 2,951.85 |
| **Repricing Software** | 26,306.00 |
| **Shipping Supplies** | 30,220.46 |
| **Telephone & Cellular** | 498.38 |
| **Travel** | 1,003.89 |
| **Utilities** | 4,954.51 |
| **Total Other Deductions** | 437,923.35 |
| **Payroll Tax Expense** | (1,309.56) |
| **Repairs & Maintenance** | 1,240.00 |
| **Retirement 401k Contribution** | 20,046.98 |
| **Retirement Account Service Fee** | 95.00 |
| **Salaries & Wages** | 84,188.67 |
| **Salaries - Officers** | 31,153.70 |
| **Taxes & Licenses** | 50.00 |
| **Total Expenses** | **610,512.14** |
| **Net Operating Income** | **(131,453.91)** |
| **Net Income** | **(131,453.91)** |

Wednesday, Aug 24, 2022 08:11:30 AM GMT-7 - Cash Basis

# Piccard Meds 4 Pets Corp
## Profit and Loss
### April - June, 2022

|  | Total |
|---|---|
| **Income** | |
| 001 Piccard Meds 4 Pets - Shopify Sales | 38,532.20 |
| 002 Walmart Sales | 287,035.76 |
| 003 Amazon US Sales | 1,749,477.82 |
| 004 Amazon CA Sales | 145,748.40 |
| 006 Amazon UK Sales | 34,191.44 |
| 010 Amazon Europe Sales | 15,331.30 |
| 012 Amazon Marketplace | 1,152.23 |
| 015 Ebay Sales | 251,709.26 |
| 016 Miscellaneous Sales | 15.52 |
| 018 Reserve | (16,419.60) |
| 020 Facebook | 506.82 |
| 021 Rebates | 1,955.73 |
| Discounts/Refunds Given | (38,794.25) |
| Sales of Product Income | 30.00 |
| **Total Income** | **2,470,472.63** |
| **Cost of Goods Sold** | |
| Contract Virtual Labor | 9,382.58 |
| Purchases - Merchandise | 1,174,512.92 |
| Shipping, Freight & Delivery | |
| Ebay | 63.58 |
| Fedex | 30,866.27 |
| Globelogistic - Ascendia | 50,954.05 |
| Groovepacker.com | 1,368.61 |
| Shein Distribution | 43.77 |
| ShipStation | 435.00 |
| UPS | 3,396.97 |
| USPS Stamps - Endicia | 229,853.19 |
| Total Shipping, Freight & Delivery | 316,981.44 |
| **Total Cost of Goods Sold** | **1,500,876.94** |
| **Gross Profit** | **969,595.69** |
| **Expenses** | |
| Advertising & Marketing | 14,763.87 |
| Contract Labor | 7,743.37 |
| Interest Paid | 17,501.46 |
| Other Deductions | |
| Answering Service | 100.00 |
| Auto & Truck Expense | 3,083.15 |
| Bank Charges & Fees | 413.83 |
| Cleaning Expenses | 3,120.00 |
| Dues & subscriptions | 6,821.09 |
| Entertainment Meals Seminar Shows | 413.54 |
| Fees | |

| | |
|---|---:|
| **Amazon Fees** | 377,417.52 |
| **Amazon Inventory Recovery Fees** | 483.10 |
| **Craiglist Fee** | 50.00 |
| **Ebay Fees** | 16,668.88 |
| **PayPal Fees** | 5,084.66 |
| **TaxValet Fees** | 5,292.00 |
| **Walmart Commission Fee** | 41,185.42 |
| **Walmart Fees** | 9.00 |
| **Total Fees** | 446,190.58 |
| **Insurance** | |
| **Auto Insurance** | 3,587.99 |
| **Health Insurance** | 12,803.49 |
| **Liability** | 667.50 |
| **Workman's Comp** | 904.60 |
| **Total Insurance** | 17,963.58 |
| **Internet** | 1,814.28 |
| **Legal & Professional Services** | 8,430.10 |
| **Meals & Entertainment** | 1,436.17 |
| **Office Expense & Supplies** | 9,165.05 |
| **Other Business Expenses** | 2,392.38 |
| **Property tax** | 2,207.32 |
| **Rental Equipment** | 2,951.85 |
| **Repricing Software** | 18,464.97 |
| **Shipping Supplies** | 38,961.74 |
| **Software** | 347.87 |
| **Subscriptions Fees** | 2,085.21 |
| **Telephone & Cellular** | 1,984.32 |
| **Travel** | 1,827.67 |
| **Utilities** | 5,746.05 |
| **Total Other Deductions** | 575,920.75 |
| **Payroll Tax Expense** | 1,690.81 |
| **Repairs & Maintenance** | 2,268.24 |
| **Retirement 401k Contribution** | 25,062.23 |
| **Salaries & Wages** | 103,290.96 |
| **Salaries - Officers** | 33,749.95 |
| **Taxes & Licenses** | 336.80 |
| **Total Expenses** | **782,328.44** |
| **Net Operating Income** | **187,267.25** |
| **Net Income** | **187,267.25** |

Wednesday, Aug 24, 2022 08:28:45 AM GMT-7 - Cash Basis

# Piccard Meds 4 Pets Corp
## Profit and Loss
### January - June, 2022

|  | Total |
|---|---:|
| **Income** | |
| 001 Piccard Meds 4 Pets - Shopify Sales | 96,375.15 |
| 002 Walmart Sales | 580,726.83 |
| 003 Amazon US Sales | 2,591,345.12 |
| 004 Amazon CA Sales | 308,030.25 |
| 006 Amazon UK Sales | 54,904.79 |
| 010 Amazon Europe Sales | 18,844.70 |
| 012 Amazon Marketplace | 1,152.23 |
| 015 Ebay Sales | 472,083.81 |
| 016 Miscellaneous Sales | 1,314.01 |
| 018 Reserve | 0.00 |
| 019 Sears Sales | 162.33 |
| 020 Facebook | 743.57 |
| 021 Rebates | 1,955.73 |
| Discounts/Refunds Given | (77,311.30) |
| Sales of Product Income | 30.00 |
| **Total Income** | **4,050,357.22** |
| **Cost of Goods Sold** | |
| Contract Virtual Labor | 20,723.80 |
| Purchases - Merchandise | 1,996,072.01 |
| Shipping, Freight & Delivery | |
| DHL | 614.29 |
| Ebay | 167.16 |
| Fedex | 59,968.21 |
| Globelogistic - Ascendia | 112,755.14 |
| Groovepacker.com | 2,568.61 |
| Shein Distribution | 43.77 |
| ShipStation | 870.00 |
| UPS | 5,459.94 |
| USPS Stamps - Endicia | 402,460.37 |
| Total Shipping, Freight & Delivery | 584,907.49 |
| **Total Cost of Goods Sold** | **2,601,703.30** |
| **Gross Profit** | **1,448,653.92** |
| **Expenses** | |
| Advertising & Marketing | 32,326.83 |
| Contract Labor | 8,360.88 |
| Interest Paid | 36,444.99 |
| Other Deductions | |
| Answering Service | 359.88 |
| Auto & Truck Expense | 3,605.87 |
| Bank Charges & Fees | 3,231.19 |
| Cleaning Expenses | 5,480.00 |
| Dues & subscriptions | 12,969.95 |

| | |
|---|---:|
| **Email Management** | 5,170.67 |
| **Entertainment Meals Seminar Shows** | 413.54 |
| **Fees** | |
| **Amazon Fees** | 627,404.72 |
| **Amazon Inventory Recovery Fees** | 1,137.73 |
| **Craiglist Fee** | 50.00 |
| **Ebay Fees** | 32,117.41 |
| **PayPal Fees** | 8,423.34 |
| **Shopify Fees** | 2,044.01 |
| **TaxValet Fees** | 10,634.40 |
| **Walmart Commission Fee** | 83,507.61 |
| **Walmart Fees** | 19.50 |
| **Total Fees** | 765,338.72 |
| **Insurance** | |
| **Auto Insurance** | 4,943.84 |
| **Health Insurance** | 25,606.98 |
| **Liability** | 1,112.50 |
| **Workman's Comp** | 2,883.81 |
| **Total Insurance** | 34,547.13 |
| **Internet** | 3,622.98 |
| **Legal & Professional Services** | 20,033.24 |
| **Meals & Entertainment** | 1,869.37 |
| **Office Expense & Supplies** | 9,553.56 |
| **Other Business Expenses** | 2,392.38 |
| **Property tax** | 6,950.85 |
| **Rental Equipment** | 5,903.70 |
| **Repricing Software** | 44,770.97 |
| **Shipping Supplies** | 69,182.20 |
| **Software** | 347.87 |
| **Subscriptions Fees** | 2,085.21 |
| **Telephone & Cellular** | 2,482.70 |
| **Travel** | 2,831.56 |
| **Utilities** | 10,700.56 |
| **Total Other Deductions** | 1,013,844.10 |
| **Payroll Tax Expense** | 381.25 |
| **Repairs & Maintenance** | 3,508.24 |
| **Retirement 401k Contribution** | 45,109.21 |
| **Retirement Account Service Fee** | 95.00 |
| **Salaries & Wages** | 187,479.63 |
| **Salaries - Officers** | 64,903.65 |
| **Taxes & Licenses** | 386.80 |
| **Total Expenses** | **1,392,840.58** |
| **Net Operating Income** | **55,813.34** |
| **Net Income** | **55,813.34** |

| In re: Piccard Pet Supply Corp | Case No.: 3:23-bk-00210 | |
|---|---|---|
| **CASH COLLATERAL BUDGET** | | |
| **March 1, 2023 - April 17, 2023** | | |
| | | |
| **REVENUE** | **Amount** | |
| Gross Revenue | $1,020,000.00 | |
| Cost of Goods Sold | $649,999.50 | |
| ***Net Revenue*** | | **$370,001** |
| | | |
| **EXPENSES** | | |
| *Advertising* | $2,333.00 | |
| *Payroll - Employees* | $46,869.00 | |
| *Answering Service* | $91.50 | |
| *Online Store Fees* | $191,334.00 | |
| *Payroll - Contractors* | $2,089.50 | |
| *Payroll - Officers* | $95.31 | |
| *Taxes & Licenses* | $16,915.00 | |
| *401(k) account fee* | $50.62 | |
| *401(k) Contributions* | $1,127.00 | |
| *Payroll Tax* | $95.31 | |
| *Repairs & Maintenance* | $876.00 | |
| *Auto & Truck* | $900.00 | |
| *Shipping Supplies* | $17,295.00 | |
| *Car & Truck* | $4,572.00 | |
| *Meals & Entertainment* | $466.50 | |
| *Bank Charges* | $807.00 | |
| *Health Insurance* | $6,402.00 | |
| *Liability Insurance* | $2,781.00 | |
| *Worker's Comp* | $720.00 | |
| *Insurance - Auto* | $1,234.50 | |
| *Repricing Software* | $11,191.50 | |
| *Software* | $87.00 | |
| *Subscriptions* | $520.50 | |
| *Utilities* | $780.75 | |
| *Travel* | $708.00 | |
| *Telephone* | $621.00 | |
| *Rental Equipment* | $1,474.50 | |
| *Office Expenses & Supplies* | $2,388.00 | |
| *Cleaning* | $1,369.50 | |
| *Trustee Fees* | $1,500.00 | |
| *Internet* | $904.50 | |
| Property Taxes | $1,737.00 | |
| | | |
| **Total Operating Expenses** | | **$318,599.49** |
| | | |
| **AP PAYMENTS** | | |
| *Amazon Capital Services -on entry of order* | $7,543 | |
| *Amazon Capital 3/10* | $7,500 | |

| | | | |
|---|---|---|---|
| *Amazon Capital 3/24* | $7,500 | | |
| *Amazon Capital 4/7* | $7,500 | | |
| *Ameris Bank 3/1* | $5,000 | | |
| *Ameris Bank 4/1* | $5,000 | | |
| | | | |
| **Total AP Payments** | | **$40,043** | |
| | | | |
| **NET** | | | **$11,358.01** |

**ORDERED.**

**Dated:  April 24, 2023**

Jacob A. Brown
United States Bankruptcy Judge

UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

IN RE:

PICCARD PETS SUPPLIES, CORP.          CASE NO.: 3:23-bk-00210-JAB

                    Debtor.

_____/

PICCARD PETS SUPPLIES, CORP.          Adversary Proceeding: 3:23-ap-00028

                    Plaintiff.

v.

FOX CAPITAL GROUP, INC. d/b/a FOX
BUSINESS FUNDING, WHITE ROAD
CAPITAL, LLC d/b/a GFE HOLDINGS,
SELLERS FUNDING CORP, ODK
CAPITAL, LLC, CELTIC BANK, THE
LAW OFFICES OF KENNETH H.
DRAMER, P.C. and CLOUDFUND, LLC

_____/

## <u>ORDER GRANTING MOTION FOR PRELIMINARY INJUNCTION</u>

THIS CASE came before the Court on APRIL 20, 2023 at 10:00am on the

Plaintiff/Debtor's Motion for Preliminary Injunction (Doc. No. 4) (the "Motion").  Upon

consideration of the Motion and record from the hearing, it is:

**ORDERED:**

1.      The Motion is Granted.

2.      The Court hereby enters a Preliminary Injunction against all named Defendants enjoining any collection activity by the Defendants against Plaintiff's CEO, Marlon Martinez.

3.      Until the Preliminary Injunction has expired or is modified by the Court, any applicable statute of limitations for all pending or prospective litigation, as well as any collection activity, claims, and causes of action that have been filed or that could be filed by the defendants against Marlon Martinez shall be tolled.

4.      The Court retains the right to supplement this Order with findings of fact and conclusions of law.

5.      This Order is without prejudice to any future Order on a continuing Preliminary Injunction. All Defendants reserve all available rights and defenses to oppose or defend any future application or continued hearing on the Preliminary Injunction.

6.      This Preliminary Injunction shall continue until a further hearing on the Motion, to be conducted June 15, 2023 at 11:30am at Bryan Simpson United States Courthouse, in Courtroom 4C, 300 North Hogan Street, 4th Floor, Jacksonville, FL 32202.


###

Attorney Thomas C. Adam is directed to serve a copy of this order on interested parties who are non-CM/ECF users and file a proof of service within 3 days of entry of the order.

*EXHIBIT B*
*To Confirmation Order*

*Piccard Pets Supplies Corp*
*Chapter 11 Case No.: 3:23-00210-JAB*

**Pro Rata Distribution**

| Creditor | Address | Account # | Amount of Claim | Pro Rata Share | Total Distribution From Class 5 | Monthly Distribution From Class 5 | Total Distribution From Guarantor | Yearly Distribution From Guarantor |
|---|---|---|---|---|---|---|---|---|
| US Small Business Administration | 721 19th Street Suite 325 Denver CO 80202 | 7901 | $860,141.39 | 23.69% | $28,433.36 | $473.89 | $1,184.72 | $236.94 |
| American Express | Becket and Lee LLP PO Box 3001 Malvern PA 19355-0701 | 5000 | $29,172.63 | 0.80% | $964.35 | $16.07 | $40.18 | $8.04 |
| American Express | Becket and Lee LLP PO Box 3001 Malvern PA 19355-0701 | 6007 | $395,209.69 | 10.89% | $13,064.29 | $217.74 | $544.35 | $108.87 |
| American Express | Becket and Lee LLP PO Box 3001 Malvern PA 19355-0701 | 1008 | $5,038.17 | 0.14% | $166.54 | $2.78 | $6.94 | $1.39 |
| ODK Capital, LLC | 4700 W Daybreak Pkwy Suite 200, South Jordan, UT 84009 O566 | | $257,627.47 | 7.10% | $8,516.29 | $141.94 | $354.85 | $70.97 |
| JP Morgan Chase Bank | JP Morgan Chase Bank PO Box 15368 Wilmington, DE 19850 | 4835 | $50,488.79 | 1.39% | $1,668.99 | $27.82 | $69.54 | $13.91 |
| US Bank NA dba Elan Financial | 4801 Frederica Street, Owensboro KY 42301 | 8887 | $8,230.51 | 0.23% | $272.07 | $4.53 | $11.34 | $2.27 |
| MWI Veterinary Supply Co. | Angela Rodenbeck 9075 Centre Pointe Drive Suite 140 West Chester, OH 45069 | | $1,130,787.43 | 31.15% | $37,380.00 | $623.00 | $1,557.50 | $311.50 |
| SellersFunding Corp. | 1290 Weston Road Suite 306, Weston, FL 33326 | 4477 | $102,362.50 | 2.82% | $3,383.76 | $56.40 | $140.99 | $28.20 |
| White Road Capital | 27-01 Queens Plaza North, Ste 802, Long Island City, NY 11101 | | $38,061.70 | 1.05% | $1,258.19 | $20.97 | $52.42 | $10.48 |
| Capital One Spark Business | PO Box 60519 City of Industry, CA 91716 | 4761 | $311,467.02 | 8.58% | $10,296.04 | $171.60 | $429.00 | $85.80 |
| Cloudfund LLC | 400 Rella Blvd, Ste 165-101 Suffern, NY 10901 | 4505 | $106,170.00 | 2.92% | $3,509.62 | $58.49 | $146.23 | $29.25 |
| Divvy | 13707 S 200 West, Ste 100, Draper UT 84020 | 215 | $123,338.73 | 3.40% | $4,077.16 | $67.95 | $169.88 | $33.98 |
| Feedvisor | 96 Spring Street 7th Floor, New York, NY 10012 | | $9,040.00 | 0.25% | $298.83 | $4.98 | $12.45 | $2.49 |
| Law Office of Kenneth H. Dramer | 567 Broadway Massapequa, NY11758 | | $22,000.00 | 0.61% | $727.25 | $12.12 | $30.30 | $6.06 |
| Fox Capital Group, Inc. | 1920 E Hallandale Beach Blvd. Ste 503, Hallandale, FL 33009 | 5738 | $165,000.00 | 4.55% | $5,454.34 | $90.91 | $227.26 | $45.45 |
| Kong Company, LLC | 16191 Table Mountain Parkway Golden CO 80403 | 1447 | $16,000.00 | 0.44% | $528.91 | $8.82 | $22.04 | $4.41 |
| **Total** | | | $3,630,136.03 | 100.00% | $120,000.00 | $2,000.00 | $5,000.00 | $1,000.00 |